# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2114

_____

Roger J. Bergfeld, Sr.;                      *
Denise I. Bergfeld,                          *
                                             *
          Plaintiffs/Appellants,             *
                                             *   Appeal from the United States
          v.                                 *   District Court for the
                                             *   Northern District of Iowa.
Unimin Corporation,                          *
                                             *
          Defendant,                         *
                                             *
Martin Marietta Corporation, also            *
known as Lockheed Martin Corporation,*
                                             *
          Defendant/Appellee.                *

_____

Submitted: December 12, 2002

Filed: February 11, 2003
_____

Before WOLLMAN, LAY, and MAGILL, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Roger and Denise Bergfeld appeal the district court's[1] adverse grant of summary judgment on their products liability claim. The district court concluded that Roger Bergfeld's (Bergfeld) employer, the John Deere Dubuque Works Foundry, was a sophisticated user of the silica sand that allegedly caused his injuries and thus that Martin Marietta Corporation[2] (Lockheed Martin) had no duty to warn Deere of the risks posed by excessive exposure to silica sand. We affirm.

I.

From 1976 to 1983 Lockheed Martin sold silica sand to Deere for use in making molds and cores in Deere's Dubuque, Iowa, foundry. Lockheed Martin shipped the sand in bulk to Deere by railcar and tractor-trailer. The Material Safety Data Sheet provided by Lockheed Martin described silica as "nontoxic." When used in a foundry's manufacturing process, however, silica sand fractures into fine dust and becomes airborne. Workers exposed to respirable silica dust are at risk of contracting the lung disease silicosis.

Bergfeld performed several jobs in the Dubuque Works Foundry from March 20, 1972, until 1986. He sampled and tested molds, melted iron, and transferred molten iron from the furnace to the production lines. Bergfeld had no role in ordering or unloading the sand, nor was he responsible for making molds or cores with the sand. Although Bergfeld worked around respirable silica dust, he concedes that he was never exposed to silica in excess of the permissible exposure limit established by

---

[1]The Honorable Michael J. Melloy, then United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Court of Appeals for the Eighth Circuit.

[2]In 1995, Martin Marietta Corporation and Lockheed Corporation merged pursuant to an agreement whereby each became a subsidiary of a new corporation, Lockheed Martin Corporation. Although many of the events at issue in this appeal occurred prior to this merger, we will refer to the appellee as Lockheed Martin.

the Occupational Safety and Health Administration (OSHA). It was Deere's policy not to provide respiratory protection to workers who were not exposed to silica concentrations exceeding the OSHA limit.

In 1974, the National Institute for Occupational Safety and Health (NIOSH) released a recommendation that the exposure limit for silica be reduced by one half to 50 micrograms per cubic meters over a ten hour work day. Lockheed Martin did not provide information about the NIOSH recommendation to Deere. Unlike the OSHA regulation, which establishes a 100 microgram limit, the NIOSH recommendation is not binding on employers. Bergfeld claimed that Lockheed Martin failed to warn either him or Deere of the risk of silicosis associated with exposure to silica dust concentrations below the maximum level permitted by OSHA regulation but above the maximum level recommended by NIOSH. The district court granted summary judgment to Lockheed Martin on all claims. On appeal, Bergfeld contends that the district court erred in concluding as a matter of law that Lockheed Martin had no duty to warn Deere that silicosis could be contracted from exposure to concentrations of respirable silica dust below the OSHA limit. In addition, Bergfeld contends that the district court erred by considering the affidavit of a witness that Lockheed Martin did not disclose on its witness list.

## II.

We review the district court's grant of summary judgment <u>de novo</u>, examining the evidence in a light most favorable to the nonmoving party, in this case Bergfeld. <u>Smith v. Allen Health Sys., Inc.</u>, 302 F.3d 827, 832 (8th Cir. 2002). We affirm only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>; Fed. R. Civ. P. 56(c).

Iowa has adopted § 388 of the Restatement (Second) of Torts regarding a manufacturer's duty to warn of the dangers associated with the use of its products. Mercer v. Pittway Corp., 616 N.W.2d 602, 623 (Iowa 2000). Section 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Section 388 is a rule of negligence, not one of strict liability. Mercer, 616 N.W.2d at 623. Subsection (b) embodies the sophisticated user doctrine, which we have described as imposing "no duty to warn if the user knows or should know of the potential danger, especially when the user is a professional who should be aware of the characteristics of the product." Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 946 (8th Cir. 1998) (applying § 388 under Iowa law and quoting Strong v. E.I. DuPont de Nemours Co., 667 F.2d 682, 687 (8th Cir. 1981)).

The district court concluded that Deere was a sophisticated user and thus that Lockheed Martin had no duty to warn Deere or Bergfeld about the dangers of exposure to silica dust. Bergfeld concedes Deere's knowledge that excessive exposure to respirable silica dust increases the risk of contracting silicosis. However, he argues that Deere was insufficiently sophisticated because it did not know of and

did not implement safeguards to reduce exposure levels to the NIOSH recommended level.

We are not the first court to address a sophisticated user defense to a negligent failure to warn claim against a supplier of industrial sand. In Smith v. Walter C. Best, Inc., the court affirmed summary judgment in favor of the defendant suppliers of industrial sand. 927 F.2d 736, 737 (3d Cir. 1990) (applying § 388 under Ohio law). Like Bergfeld, Smith worked in a foundry and developed silicosis as a result of many years of exposure to silica sand on the job. Id. at 738. Because the sand was delivered in bulk and the plaintiffs did not participate in the delivery process, the foundry was in a better position to convey warnings to the employees. Id. at 740. Furthermore, the court held that it was reasonable for the sand supplier to rely on the foundry's knowledge of the dangers of silicosis, given the regulations governing silica sand, the "state of common medical knowledge," and the foundry's membership in the Industrial Health Foundation, which provided information about occupational diseases including silicosis. Id. at 741.

In Goodbar v. Whitehead Brothers, a case relied upon by the court in Smith, the court discussed the foundry industry's knowledge about silicosis dating back to the 1930s. 591 F. Supp. 552, 562 (W.D. Va. 1984) (applying § 388 under Virginia law), aff'd sub nom. Beale v. Hardy, 769 F.2d 213 (4th Cir. 1985). The court imputed the extensive knowledge of the American Foundrymen's Society (AFS) to the foundry through its vice president, who was active in the AFS and thereby exposed to much information about silicosis. Id. at 562-63. Goodbar's experts criticized the foundry's corrective measures as evidencing a lack of sophistication regarding silicosis. Id. at 565. Imperfect corrective measures, however, did not rebut facts showing knowledge of silica dust and silicosis dating back to the 1930s. Id. Granting summary judgment to the silica sand suppliers, the district court held that they could assume that the foundry would make proper use of this knowledge. Id.

Bergfeld concedes that Deere possessed the kind of generalized industry knowledge described in Goodbar and Smith. His claim is narrower in that he claims Deere did not know of the danger of silica exposure in the range between the NIOSH recommended exposure level and the OSHA limit. The record belies this assertion. Charles Peterson, the Manager of Industrial Hygiene during the time Bergfeld worked for Deere, served as the Deere representative to the AFS. He served on the Industrial Hygiene Committee, the committee that addressed workplace environmental hazards including silica dust. Peterson reviewed the Criteria for Recommended Standards for Occupational Exposure to Crystalline Silica, published by NIOSH in 1974. He discussed the recommendations with his staff, Deere managers, and foundry safety directors. Dr. Kent Oestenstad, another industrial hygienist at Deere, was also familiar with the NIOSH recommended standard. Oestenstad stated that although he had not reviewed the NIOSH recommendation in detail while he worked for Deere, he had knowledge of it through professional publications. He further stated that it would not be necessary for a silica sand supplier to provide the NIOSH standard to Deere because Deere had knowledge of it. Aside from asserting that Oestenstad was not familiar with the NIOSH standard, an assertion contradicted by the record, Bergfeld offers only Deere's failure to adopt the NIOSH standard as evidence that Deere did not know of the standard. That Deere chose not to adopt the NIOSH recommended standard is insufficient to rebut the substantial evidence of the company's knowledge of that standard.

Bergfeld contends that the district court erred in considering Peterson's affidavit because Lockheed Martin did not list Peterson in its pretrial disclosure of persons likely to have knowledge of facts relevant to the action. He argues that without Peterson's affidavit, the evidence presents a genuine issue of material fact regarding Deere's lack of knowledge of the NIOSH recommendation. We review the district court's evidentiary rulings for an abuse of discretion. Mawby v. United States, 999 F.2d 1252, 1254 (8th Cir. 1993). The "use of an undisclosed witness

should seldom be barred unless bad faith is involved." Id. (quoting Mills v. Des Arc Convalescent Home, 872 F.2d 823, 826 (8th Cir. 1989)). The record does not indicate that Lockheed Martin engaged in a bad faith effort to conceal Peterson's existence prior to trial. Deposition testimony indicated that Peterson was the manager of Deere's industrial hygiene department during the time that Bergfeld worked for Deere. Bergfeld received copies of the letter Lockheed Martin sent to Deere requesting to depose Peterson and of Deere's letter in response stating that Peterson had retired. The deposition testimony of several other witnesses indicated Peterson's role in preparing and conducting surveys of environmental health hazards at Deere. In The Corner Pocket of Sioux Falls, Inc. v. Video Lottery Techs., Inc., we affirmed the district court's refusal to consider an affidavit from a witness who was not disclosed during discovery. 123 F.3d 1107, 1112-13 (8th Cir. 1997). In Corner Pocket, the only reasonable inference supported by the evidence was that the witness was concealed until the eve of trial because his testimony would not withstand scrutiny. Id. at 1113 n.5. The defendant's use of the Peterson affidavit is unlike the "sneak attack" perpetrated in Corner Pocket. Id. at 1113. Although Peterson's name was not included in Lockheed Martin's disclosures, Bergfeld had adequate notice during discovery that Peterson was a person likely to have discoverable information. Accordingly, the district court did not abuse its discretion in considering the affidavit.[3]

The judgment is affirmed.

---

[3]Appellee's motion to file a supplemental joint appendix is granted.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.