**Lawrence B. GRAY, Respondent,**

v.

**BADGER MINING CORPORATION, individually and as successor-in-interest to the C.A. Chier Sand Company, Appellant,**

**Carpenter Brothers, Inc., et al., Defendants.**

**No. C4–02–2052.**

Court of Appeals of Minnesota.

July 15, 2003.

Michael S. Polk, Michael R. Strom, Sieben, Polk, LaVerdiere & Hawn, P.A., Hastings, MN, for respondent.

Robert E. Diehl, Cynthia R. Bartell, Minneapolis, MN; and Cathy R. Gordon, pro hac vice, Dickie, McCamey & Chilcote, P.C., Pittsburgh, PA, for appellant.

Considered and decided by SHUMAKER, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Respondent Lawrence Gray developed silicosis and sued appellant Badger Mining Corporation and various other defendants in this personal-injury action. He claimed that the defendants were negligent and strictly liable for failing to warn him of the dangers of breathing silica dust, and that

the defendants breached warranties of merchantability and fitness for intended purpose. After the district court denied the defendants' motions for summary judgment, all defendants settled with Gray, except Badger.

Badger renewed its motion for summary judgment on the legal issue that it had no duty to warn Gray. After the district court denied Badger's motion, Badger and Gray agreed to forego a trial on the disputed factual issues and stipulated to certain facts and to entry of judgment against Badger. But Badger also denied liability and preserved its right to appeal the legal issue of whether it had a duty to warn Gray. The parties thus agreed that if this court concluded that Badger had a duty to warn Gray, Badger's liability would remain at the judgment amount, but if Badger had no duty to warn, Badger's liability would be limited to a lesser amount. Badger filed this appeal after the entry of final judgment.

## FACTS

For over four decades, respondent Lawrence Gray worked in a foundry where he was exposed to silica sand. He ultimately contracted silicosis. For part of Gray's work history, appellant Badger Mining Corporation supplied silica sand to the foundry.

Gray sued Badger, among others, alleging that Badger failed to warn of the dangers of inhaling silica. Badger contended in its defense that it had no duty to warn Gray of such dangers because Gray's employer was a sophisticated buyer of silica sand and was in the best position to warn and to protect its employees.

Badger twice moved for summary judgment on the issue of duty to warn. The district court denied the motions. Badger and Gray then stipulated to the entry of judgment against Badger and agreed that

Badger would thereby preserve the duty-to-warn issue for appeal. The parties further stipulated that they would forego a trial on the facts and that if Gray prevails on appeal he will receive the stipulated judgment amount of $75,000, but if Badger prevails, Gray will accept $17,500 in satisfaction of the judgment.

In this unique procedural posture, and despite the likelihood of the existence of genuine issues of material fact, Badger appeals from the stipulated judgment and asks this court to decide whether Badger had a legal duty to warn Gray about potential hazards of inhaling silica.

Many significant facts are undisputed. Gray worked in various capacities at the Smith Foundry from 1951 to 1998. In the 1950s and 60s, he was exposed to silica dust, created when the foundry recycled sand. In those days, the foundry had no fans or exhaust systems to reduce the quantity of dust particles in the air, and employees did not have dust masks available for their protection. When protective masks became available in the early 1970s, Gray sometimes wore them. He wore masks continuously from 1993 until his retirement in 1998.

Badger was a supplier of sand in bulk to the foundry. Unquestionably, Badger supplied sand beginning in 1992, but there is evidence in the record that Badger shipped sand to the foundry before 1981. Prior to 1981, suppliers of silica sand provided no warnings of inhalation hazards. For shipments beginning in 1992, Badger gave safety warnings on invoices, bills of lading, and Material Safety Data Sheets (MSDS).

The MSDS identified silica as a hazardous ingredient in sand; noted permissible exposure limits; disclosed that silicosis is a health hazard from exposure to silica sand; described respirators to be used; and out-

lined precautions for safe handling and use of silica sand.

For over 100 years, the foundry industry has been aware of some dangers from the inhalation of silica. The American Foundrymen's Society (AFS) was formed to educate workers about foundry processes, and later the AFS provided information about the prevalence of silicosis among foundry workers. The Smith Foundry has been a member of the AFS since the 1940s. Smith's current president knew in the early 1960s that inhaling silica dust can be harmful. In the 1970s, Smith began receiving warnings from sand suppliers other than Badger about the dangers of exposure to silica dust. During the 1970s, it was common knowledge in the foundry industry that silica dust could pose a health risk, and, because of this knowledge, Smith began to offer to its foundry workers respiratory protective devices. In the 1980s, Smith's safety director worked with a consultant to help bring the foundry into compliance with OSHA standards as to silica exposure.

At all times material to the issue on appeal, sand suppliers, foundry owners and workers, and governmental regulatory agencies recognized that the inhalation of silica could cause silicosis.

## ISSUE

Did the district court err in concluding that, as a matter of law, appellant Badger Mining Company had a duty to warn respondent of the hazards of inhaling silica dust particles?

## ANALYSIS

This appeal from a stipulated judgment raises only a question of law, which we review de novo. *Moundson v. Bitzan,* 588 N.W.2d 169, 171 (Minn.App.1999). The district court held, among other things, that Badger had a duty to warn Gray of health hazards from exposure to silica. Badger contends that the court erred in that ruling because Badger was entitled to rely on Smith Foundry, a sophisticated purchaser of silica sand, to deliver appropriate safety warnings to Smith's employees. Additionally, Badger argues that it was not in a position as a bulk supplier of sand reasonably to warn Smith's foundry workers of silica dangers.

Courts determine as a matter of law whether there exists a duty to warn of a danger in a product. *Germann v. F.L. Smithe Mach. Co.,* 395 N.W.2d 922, 924 (Minn.1986). In general, there is no duty to warn as to a danger of which the product's users knew or should have known. *Harmon Contract Glazing, Inc. v. Libby–Owens–Ford Co.,* 493 N.W.2d 146, 151 (Minn.App.1992), *review denied* (Minn. Feb. 12, 1993). If a legal duty to warn is found to exist, ordinarily the trier of fact resolves the factual issues of the adequacy of the warning, breach of the duty, and causation. *Balder v. Haley,* 399 N.W.2d 77, 81 (Minn.1987). However, here, because of the parties' stipulation, the answer to the question of whether a duty to warn existed is dispositive of the case, for the parties have stipulated not to try the usual factual issues.

In Minnesota, the duty of suppliers of goods to warn users of dangers in those goods is determined under the Restatement (Second) of Torts § 388 (1965). The supreme court recognized this duty in *Mikel v. Aaker,* 256 Minn. 500, 504–05, 99 N.W.2d 76, 79–80 (1959). One who supplies goods directly or through a third person to an ultimate user is liable to the ultimate user for injury from a hazard associated with the goods if the supplier "has no reason to believe that those for whose use the [goods are] supplied will realize [the] dangerous condition [of the

goods]" and if the supplier fails to warn of the hazard. Restatement (Second) of Torts § 388(b), (c). When the ultimate user, or an intermediary through whom the goods are supplied to the end user, knows or should know of the danger of the goods, the supplier is relieved of its duty to warn. *Strong v. E.I. DuPont de Nemours & Co., Inc.*, 667 F.2d 682, 686 (8th Cir.1981). This exception to the duty to warn is commonly called the "sophisticated user" doctrine. *Bergfeld v. Unimin Corp.*, 226 F.Supp.2d 970, 977 (N.D.Iowa 2002). The exception is also known as the "learned intermediary" defense. *Todalen v. U.S. Chem. Co.*, 424 N.W.2d 73, 79 (Minn.App.1988), *review denied* (Minn. June 29, 1998), *overruled on other grounds by Tyroll v. Private Label Chems., Inc.*, 505 N.W.2d 54 (Minn.1993). When one supplies a dangerous product to an end user through an intermediary, the exception shifts liability for harm from the supplier to the intermediary or the end user if either is a sophisticated user. *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 739 (3rd Cir.1990).

The first application of the sophisticated-purchaser exception to reach the Minnesota Supreme Court was *Mulder v. Parke Davis & Co.*, 288 Minn. 332, 181 N.W.2d 882 (1970). That was a wrongful-death action in which a physician prescribed a drug manufacturer's medicine that caused a patient to die. *Id.* at 333–34, 181 N.W.2d at 884. One claim in the lawsuit was that the manufacturer failed to give an adequate warning about the drug's usage and danger. *Id.* at 334, 181 N.W.2d at 884. As to that claim, the supreme court held that

> where the only issue is failure to communicate a warning, the manufacturer is not liable if the doctor was fully aware of the facts which were the subject of the warning.

*Id.* at 335–36, 181 N.W.2d at 885 (citation omitted).

The exception was applied to an industrial injury in *Todalen*, 424 N.W.2d at 73. In *Todalen*, an employee used a dangerous chemical improperly and was injured. *Id.* at 75–76. The supplier, U.S. Chemical Co., had shipped the chemical in drums with warning labels that did not contain a caution regarding certain hazards of the chemical, but had provided the employer with MSDS. *Id.* at 76. The district court ruled that U.S. Chemical had a duty to warn the employee of the hazard of misusing the chemical. *Id.* at 80. We held that U.S. Chemical had a duty to warn the employee, and we distinguished the industrial context from the pharmaceutical context in *Mulder*. *Id.* at 79. We reasoned that in the industrial setting a greater number of people may be affected by the dangerous product and the employer is not motivated to warn employees because the employer's liability is limited by the workers' compensation laws. *Id.* (relying on *Hall v. Ashland Oil Co.*, 625 F.Supp. 1515, 1519–20 (D.Conn.1986)). Because the end-user employee in *Todalen* was not a sophisticated user, the supplier was required to warn of the hazard.

Relying on *Todalen*, the district court here declined to extend the sophisticated-user exception to the industrial context and ruled that Badger had a duty to warn Gray of the danger of silica. *Todalen* is factually distinguishable in three respects. First, the employee in *Todalen* was misusing the product, whereas Gray was exposed to the hazard during the intended and proper use of the sand. Second, the chemical in *Todalen* was shipped in drums that could have contained a visible warning label; whereas, here, the sand was shipped in bulk and poured in bulk from a truck into a storage bin. Thus, there was no container on which to affix a warning sign

or label. Third, the employee in *Todalen* handled the chemical container, whereas Gray neither received nor unloaded the bulk delivery of sand.

In addition, one factor for courts to consider when deciding whether to apply the sophisticated-user exception is the burden placed on the supplier if the supplier is required to directly warn all users of the product. Restatement (Second) of Torts § 388, cmt. n. In *Todalen*, the burden on the chemical supplier to place warning labels on the containers seemed minimal. But here, the burden on Badger would be far greater because the sand reaches the foundry in bulk and is placed in the employer's containers, over which the supplier has no control. The sand becomes hazardous when, during the foundry process, microscopic particles of silica are released into the air. Employees who breathe silica-laden air are exposed to the hazard, but those employees are not known to the supplier in advance of the use of the sand. Because of dissimilarities in material facts and the substantial burden on a bulk supplier to warn end users of product hazards, *Todalen* is not controlling.

■ Thus, we view this as a case of first impression in Minnesota, and we look to outside jurisdictions for guidance. We find persuasive the reasoning in cases in the Eighth Circuit and other jurisdictions that have ruled on the applicability of the sophisticated-purchaser defense when a foundry employee who developed silicosis sued a silica sand supplier for failing to warn either the purchaser or employee. These industry-specific cases provide us with persuasive reasoning to support the legal conclusion that a bulk supplier of silica sand to a sophisticated purchaser has no duty to warn the user of the dangers of exposure to silica dust.

In *Bergfeld v. Unimin Corp.*, a foundry employee developed silicosis and sued the supplier of silica sand. 319 F.3d 350 (8th Cir.2003). The case came before the federal court of appeals after the federal district court in Iowa granted the defendant's summary judgment motion. *Bergfeld v. Unimin Corp.*, 226 F.Supp.2d 970 (N.D.Iowa 2002). The employee alleged that the supplier failed to inform the foundry or the foundry's employees about the risk of developing silicosis from exposure to dust levels above the maximum recommended exposure level. The appellate court affirmed the district court's grant of summary judgment in favor of the sand supplier, holding that the supplier had no duty to warn because the employer was a sophisticated purchaser of sand, with the kind of generalized foundry industry knowledge relating to the dangers of inhaling silica sand and resulting silicosis. *Bergfeld*, 319 F.3d at 354.

In *Smith v. Walter C. Best, Inc.*, the court affirmed summary judgment in favor of the defendant suppliers of industrial sand after a foundry employee developed silicosis and sued the suppliers for failure to warn. 927 F.2d at 739 (applying Restatement (Second) of Torts § 388 under Ohio law). Because the sand was delivered in bulk and the employee did not personally receive the deliveries, the foundry was in a better position to convey warnings to its employees. *Id.* at 740–41. Furthermore, the court held that it was reasonable for the sand supplier to rely on the foundry's knowledge of the dangers of silicosis, given the regulations governing silica sand, the "state of common medical knowledge," and the foundry's membership in the Industrial Health Foundation, which provided information about occupational diseases including silicosis and their prevention. *Id.* at 741.

In *Goodbar v. Whitehead Bros.*, the court discussed the foundry's knowledge about silicosis dating back to the 1930s. 591 F.Supp. 552, 562 (W.D.Va.1984) (apply-

ing Restatement (Second) of Torts § 388 under Virginia law), *aff'd sub. nom. Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985). The court imputed the extensive knowledge of the AFS to the foundry through its vice president because he was active in the AFS and received information about silicosis. *Id.* at 561–62. The supplier could assume that the foundry would make proper use of this knowledge. And even if the foundry's corrective measures indicated that the foundry was not sophisticated regarding silicosis, this argument could not rebut facts showing knowledge of silica dust and silicosis dating back to the 1930s. *Id.* at 565. The district court concluded that the sand supplier had no duty to warn the foundry's employees because the foundry was in the better position to warn its employees. Thus, the district court granted summary judgment to the silica sand suppliers. *Id.* at 566.

The undisputed facts here show that Smith Foundry knew or should have known of the dangers of silica and was in a reasonable position to warn its employees. Thus, Smith was a sophisticated purchaser of the sand to which Gray was exposed during his foundry career.

On the rationale in *Bergfeld, Goodbar,* and *Smith*, it was reasonable for Badger as a bulk supplier of silica sand to rely on Smith to warn and protect its employees.

## DECISION

Because respondent's employer was a sophisticated purchaser of a dangerous product, appellant did not have a duty to warn respondent. Therefore, the district court erred in denying appellant's motion for summary judgment on respondent's negligent failure-to-warn claim.

**Reversed.**