**CONWED CORPORATION, Plaintiff,**

v.

**UNION CARBIDE CORPORATION, Defendant.**

Civil No. 5–92–88 (DDA/RLE).

United States District Court, D. Minnesota.

Sept. 8, 2003.

Brownson & Ballou, PLLP by Robert D. Brownson and Kristi K. Warner, Minneapolis, MN, and Michael R. Goldman, Chicago, IL, for Plaintiff Conwed Corporation.

Foley & Lardner by Trevor J. Will and Michael D. Rosenberg, Milwaukee, WI, and Lisa M. Elliott, Minneapolis, MN, for Defendant Union Carbide Corporation.

*ORDER ON DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT ON BULK SUPPLIER / SOPHISTICATED USER GROUNDS*

ALSOP, Senior District Judge.

This is a workers' compensation subrogation action under Minnesota law. Plain-

tiff Conwed Corporation ("Conwed") paid workers' compensation benefits to many of its former employees who developed asbestos-related diseases. Conwed claims that Defendant Union Carbide Corporation ("Union Carbide") is liable to Conwed for those benefit payments because Union Carbide failed adequately to warn of the hazards of asbestos that Union Carbide manufactured and sold to Conwed. Union Carbide moved for summary judgment, *inter alia*, on the ground that Minnesota law imposed no duty to warn on Union Carbide because Conwed was a sophisticated user of asbestos. The Court denied that motion by Order dated July 3, 2001, holding that material factual issues existed concerning Conwed's status as a sophisticated user, the adequacy of any warnings Union Carbide communicated to Conwed, and the reasonableness of Union Carbide's reliance upon Conwed to warn Conwed's employees of those hazards. In August and September 2002, the parties tried the portion of the case involving Conwed's former employees who developed mesothelioma to a jury, which returned a verdict in favor of Union Carbide.

The Court granted Union Carbide's request to reconsider the July 3, 2001, Order in light of the evidence developed at the mesothelioma trial, the result of that trial, and the recent decision in *Gray v. Badger Mining Corp.*, 664 N.W.2d 881 (Minn.Ct. App.2003). Union Carbide argues that *Gray* clarified the sophisticated user defense in Minnesota in such a way as to compel a result different from that reached in the July 3, 2001, Order. In the alternative, Union Carbide contends that the more developed factual record entitles Union Carbide to the benefit of the sophisticated user defense as a matter of law. Summary judgment is appropriate if no

genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court will deny Union Carbide's renewed motion for summary judgment on bulk supplier / sophisticated user grounds for the reasons stated in this Order.[1]

Many of the pertinent facts appear in the Court's July 3, 2001, Order. The record for the renewed motion, viewed in the light most favorable to Conwed, indicates that studies had established a causal link between asbestos exposure and diseases of the lung, including asbestosis and cancer, when Union Carbide began selling asbestos to Conwed in 1965. Minnesota began regulating industrial workplace exposure to asbestos dust in 1950, and at all times pertinent to this case Conwed management was aware that exposure to high concentrations of asbestos dust was potentially harmful. In 1968, Union Carbide placed a warning against breathing asbestos dust on the bags in which Union Carbide shipped asbestos to Conwed. Union Carbide also provided Conwed with asbestos toxicology reports, in which Union Carbide suggested that exposure to asbestos dust at concentrations of less than five million particles per cubic foot of air was safe. Conwed management similarly believed that exposure to asbestos dust at that level was safe. Union Carbide, however, in 1967 had commissioned a report on asbestos hazards which called the five million particles per cubic foot standard into question and which suggested that safe exposure limits in fact were much lower. Other research Union Carbide commissioned in 1966, furthermore, supported an inference that Union Carbide's asbestos was more toxic than other forms of asbestos. Union Carbide kept the re-

---

**1.** The Court has considered and resolved this motion without oral argument in accordance with Fed.R.Civ.P. 78.

sults of the 1966 study and the 1967 report confidential and did not share that information with Conwed or any other purchaser of Union Carbide's asbestos. Although Union Carbide conducted some testing of air samples taken at Conwed's plant, Union Carbide also appears to have done little else to determine how Conwed used Union Carbide's asbestos or what Conwed knew about the hazards of that asbestos.

The Court's July 3, 2001, Order provides a detailed discussion of the "sophisticated user" defense in Minnesota, and the discussion here will be confined to whether *Gray* affects the application of that defense in this case. The plaintiff in *Gray* was a foundry employee who developed silicosis as a result of inhaling silica sand dust in the course of his employment. 664 N.W.2d at 883. The defendant, a supplier of silica sand to the foundry, delivered the sand in bulk and had little ability to communicate a warning to the foundry's employees. *Id.* at 886. The defendant argued that it had no duty to warn the plaintiff because the foundry was aware of the hazards of inhaling silica dust and was in a better position than the defendant to warn its employees of those hazards. *Id.* The parties took the unusual step of agreeing to the entry of judgment on stipulated facts, so the case reached the appellate court in a "unique procedural posture, and despite the likelihood of the existence of genuine issues of material fact." *Id.* Given the foundry's undisputed knowledge of the hazard and superior ability to communicate a warning based on the nature of the product, the Minnesota Court of Appeals held that the defendant reasonably relied on the foundry to warn the employees as a matter of law and that the defendant thus

had no duty to warn the plaintiff. *Id.* at 887.

Union Carbide, noting that *Gray* does not address the defendant's knowledge of the hazards of silica sand, contends that a supplier's knowledge of its product's hazards, including knowledge superior to that the purchaser possesses, is no longer relevant to the sophisticated user defense in Minnesota. That position, however, does not comport with *Restatement (Second) of Torts* § 388 (1965), which *Gray* itself recognizes as providing the applicable legal standard, 664 N.W.2d at 886, and which focuses specifically on the reasonableness of the *supplier's* reliance on an intermediary to communicate a warning to a product's ultimate user. The reasonableness of a supplier's actions of necessity depends upon the supplier's knowledge of the pertinent facts.[2] With respect to the supplier's superior knowledge of a hazard, Union Carbide's position also is flatly contrary to *Hill v. Wilmington Chemical Corp.* 279 Minn. 336, 156 N.W.2d 898 (1968), which held that a supplier of a product has a duty to warn of dangers inherent in the use of the product and not known to the purchaser. *Id.* at 902. To the extent that *Gray's* analysis supports Union Carbide's position, the Court accordingly finds that the Minnesota Supreme Court is not likely to adopt it. *See United Fire & Cas. Ins. Co. v. Garvey,* 328 F.3d 411, 413 (8th Cir. 2003) (holding that decisions of an intermediate state appellate court are not binding on a federal court sitting in diversity if the state's highest court would decide the issue differently). *Gray* otherwise is consistent with the Court's July 3, 2001, Order and with prior Minnesota case law. *See Hegna v. E.I. du Pont de Nemours & Co.,* 825 F.Supp. 880, 884 (D.Minn.1993) (hold-

---

**2.** Asbestos products liability cases from other jurisdictions rejecting arguments similar to Union Carbide's include *Adkins v. GAF Corp.,* 923 F.2d 1225, 1231 (6th Cir.1991), *Willis v.* *Raymark Industries, Inc.,* 905 F.2d 793, 797 (4th Cir.1990), and *Russo v. Abex Corp.,* 670 F.Supp. 206, 208–09 (E.D.Mich.1987).

ing that a bulk supplier satisfies its duty to warn an ultimate user of a product under Minnesota law when the bulk supplier reasonably believes that an intermediary knows the dangers associated with the product and reasonably relies on the intermediary to communicate a warning of those dangers to the ultimate user), *aff'd*, 27 F.3d 571 (8th Cir.1994) (unpublished table decision). *Cf. Minneapolis Soc'y of Fine Arts v. Parker–Klein Assocs. Architects, Inc.*, 354 N.W.2d 816, 821 (Minn. 1984) (holding generally that a product supplier has no duty to warn of hazards of which the product user is or should have been aware), *overruled on other grounds by Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990).

After carefully reviewing the present record, the Court disagrees with Union Carbide's contention that the sophisticated user issue is amenable to summary disposition under the appropriate legal standard. Union Carbide has not met its burden of establishing, given all the facts and circumstances of the case, that Union Carbide's knowledge of the hazards of asbestos was not superior to Conwed's or that Union Carbide's reliance on Conwed to communicate warnings to Conwed's employees was reasonable. Issues of fact remain as well regarding the adequacy of Union Carbide's warnings.

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Union Carbide's renewed motion for summary judgment on bulk supplier / sophisticated user grounds (Docket No. 514) is DENIED.