# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-1984

_____

Thomas Lowell Linden, Jr.,        *
                                   *

         Plaintiff-Appellant,    *

                                   *   Appeal from the United States

   v.                             *   District Court for the

                                   *   Southern District of Iowa.

CNH America, LLC, doing business   *

as Case Construction Equipment,   *

                                   *

         Defendant-Appellee.    *

_____

Submitted: December 14, 2011
Filed: March 14, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Plaintiff Thomas Lowell Linden, Jr., filed a products liability action against Defendant CNH America, LLC (CNH), based on injuries Linden sustained while operating a CNH-manufactured bulldozer, and a jury returned a verdict in favor of CNH. Linden now appeals, arguing the district court[1] committed reversible error by

_____

[1] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

granting a directed verdict to CNH on his manufacturing defect claim, in its choice of jury instructions, and by failing to strike a prospective juror for cause. We affirm.

## I. Background

The facts of the case are straightforward. Linden was operating a bulldozer to grade a steep bank in a drainage pond when the bulldozer rolled and Linden was thrown from the safety of the bulldozer's rollover protection system. The bulldozer landed on his legs, causing severe injury.

Linden sued CNH and Indiana Mills & Manufacturing, Inc. (IMMI) in federal district court based on diversity of citizenship. See 18 U.S.C. § 1332. In his complaint, Linden alleged the CNH bulldozer incorporated an IMMI seatbelt that was defective in its manufacture, design, and warnings. Because the seatbelt was manufactured more than 10 years earlier, the district court dismissed the claims against IMMI pursuant to the Indiana statute of repose. The court allowed the claims against CNH, an Iowa company, to proceed. The district court later confirmed that CNH could be held responsible under Iowa law for defects in the seatbelt because the seatbelt was a component part of the bulldozer.

At trial, Linden asserted three separate theories of liability: (1) inadequate warnings; (2) design defect; and (3) manufacturing defect. After Linden's case in chief, the district court granted CNH's motion for a directed verdict under Rule 50(a) and dismissed Linden's manufacturing defect claim. At the conclusion of trial, the jury returned a verdict in favor of CNH on the remaining two claims. The district court entered judgment consistent with the jury's verdict.

## II. Analysis

Linden raises three separate claims of error by the district court. First, Linden argues the district court erred when it granted CNH's motion for a directed verdict on his manufacturing defect claim. Second, he argues the district court erred in its choice of jury instructions. Third, he contends the district court committed reversible error by refusing to strike a potential juror for cause. In addition to disputing each of Linden's claims, CNH argues that Linden's appeal is barred because Linden failed to file a postverdict motion under Rule 59 of the Federal Rules of Civil Procedure. We will address each of Linden's claims of error in turn, but because CNH's argument is a threshold matter, we address it first.

### A. Appropriateness of Appeal

CNH contends Linden's entire appeal is forfeited because Linden failed to file a post-trial motion in the district court and thus "prevented the district court from explaining the basis for many of its decisions." Seizing on language from Unitherm Food Systems, Inc., v. Swift-Eckrich, Inc., 546 U.S. 394 (2006), CNH claims Linden is precluded from pursuing a new trial on appeal because he failed to file a post-trial motion. We do not agree with CNH's reading of Unitherm and therefore do not agree Linden's appeal is barred.

In Unitherm, the Supreme Court held that a party in a civil jury trial who believes the evidence is legally insufficient to support an adverse jury verdict must seek judgment as a matter of law under Rule 50 before attempting to raise a sufficiency of the evidence challenge on appeal. Unitherm, 546 U.S. at 396. The Unitherm opinion includes language that, when read out of context, indicates that an appeal may never be taken unless a postverdict motion is filed. See id. at 404 ("[A] party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court."). However, in addressing

-3-

whether this language extends to all post-trial appeals, appeals courts have uniformly limited it to sufficiency of the evidence challenges where parties fail to file a postverdict motion under Rule 50(b) after the *denial* of a Rule 50(a) preverdict motion.[2]  Reading Unitherm more broadly would dramatically alter the well-accepted rule that an objection at trial generally preserves an issue for review on appeal.[3]  See

_____

[2] See Van Alstyne v. Elec. Scriptorium, Ltd., 560 F.3d 199, 203-04 n.3 (4th Cir. 2009) (finding Unitherm inapplicable where party appealing does not challenge sufficiency of the evidence); Bryant v. Dollar Gen. Corp., 538 F.3d 394, 397-98 n.2 (6th Cir. 2008) (concluding defendant's objection to jury instructions preserved claim for appeal and noting ample support exists for the interpretation that Unitherm only addresses Rule 50 motions based on the sufficiency of the evidence); Fuesting v. Zimmer, Inc., 448 F.3d 936, 939 (7th Cir. 2006) (concluding that "in Unitherm, the Court was specifically addressing the situation of a litigant seeking a new trial on the basis of the insufficiency of the evidence" and "[t]he Court did not hold that a court of appeals may not award a new trial on the basis of an erroneous evidentiary decision" in the absence of a postverdict motion).  See also Hi Ltd. P'ship v. Winghouse of Fla., Inc., 451 F.3d 1300, 1302 (11th Cir. 2006) ("Filing a pre-verdict, Rule 50(a) motion for judgment as a matter of law cannot excuse a party's post-verdict failure to move for either a JNOV or a new trial pursuant to Rule 59(b).").

[3] CNH points to language from our opinion in EEOC v. Southwestern Bell Telephone, L.P., 550 F.3d 704 (8th Cir. 2008), as supporting a broader reading of Unitherm.  In Southwestern Bell, we found that a party's failure to file a Rule 50(b) motion after the entry of judgment left us without a basis to review the party's sufficiency of the evidence challenge on appeal.  Id. at 711.  In a footnote, we noted that the party had also failed to seek a new trial under Rule 59, and that the party's failure to do so "also preclude[d] our review of any request for a new trial."  550 F.3d at 709 n.3.  CNH reads this footnote out of context as requiring that either a Rule 50 or Rule 59 motion must be filed before perfecting any post-trial appeal.  However, like Unitherm, Southwestern Bell limited its holding to sufficiency of the evidence challenges where a party fails to renew a motion for a directed verdict under Rule 50(b) after the court denies its Rule 50(a) motion.  See Sw. Bell, 550 F.3d at 710 ("[F]iling a Rule 50(b) motion is a prerequisite for appealing the denial of a Rule 50(a) motion because it allows the district court, which has 'first-hand knowledge of witnesses, testimony, and issues,' an opportunity after the verdict to review the legal

-4-

9B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2540 (3d ed.) (West 2011) ("If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial . . . .").

We find Linden's appeal is properly before the Court. First, Linden asserts that the district court erred in granting CNH's Rule 50(a) motion on his manufacturing defect claims. Once the district court granted the directed verdict for CNH on the matter and judgment was entered, Linden was free to appeal. <u>See generally</u> Fed. R. App. P. 4. Although Linden had the option of filing a Rule 59 motion following the entry of judgment, it would be illogical to require that Linden file a separate Rule 50 or Rule 59 motion on a matter that had already been considered and decided by the district court in favor of CNH by the granting of CNH's Rule 50(a) motion. <u>Cf.</u> <u>Cone v. W. Va. Pulp & Paper Co.</u>, 330 U.S. 212, 216 (1947) ("Determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment <u>in the first instance</u> of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." (emphasis added)). The remainder of Linden's appeal is not a sufficiency of the evidence challenge. Instead, Linden asks this Court to review legal rulings made by the district court at trial over his objection. We therefore turn to the merits of his appeal.

---

sufficiency of the evidence." (quoting <u>Unitherm</u>, 546 U.S. at 401 n.3)). Accordingly, our own precedent is in line with the other circuit courts that have addressed this issue.

## B. Directed Verdict on Manufacturing Defect Claims

Linden first argues the district court erred when it granted CNH's Rule 50 motion and dismissed his manufacturing defect claim. Linden contends there was sufficient evidence to support a verdict that the seatbelt incorporated by CNH into its bulldozer had three separate manufacturing defects which failed to comport with the intended buckle design: (1) the buckle case was not strengthened by polycarbonate; (2) there was insufficient Ultra Violet (UV) resistant material to protect the buckle casing from UV degradation; and (3) the ejector holder did not fit firmly in the buckle housing. Linden contends that if the jury had been able to consider his theories of manufacturing defect, the verdict likely would have been in his favor.

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "In both Rule 56 motions for summary judgment and Rule 50 motions for judgment as a matter of law, the inquiry is the same: '[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Kinserlow v. CMI Corp., 217 F.3d 1021, 1025 (8th Cir. 2000) (citation omitted). "Our review of the district court's decision is de novo, using the same standards as the district court." Id.

The Supreme Court of Iowa has "adopted the Product Restatement, which provides a product 'contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product.'" Depositors Ins. Co. v. Wal-Mart Stores, Inc., 506 F.3d 1092, 1095 (8th Cir. 2007) (quoting Restatement (Third) of Torts: Products Liability § 2(a) (1998)) (supplied emphasis omitted). "Courts and the Restatement of Torts distinguish between design defects and manufacturing defects." St. Paul Fire &

Marine Ins. Co. v. Lago Canyon, Inc., 561 F.3d 1181, 1190 n.18 (11th Cir. 2009); see also Parish v. Jumpking, Inc., 719 N.W.2d 540, 542 n.2 (Iowa 2006) ("Design and manufacturing defects are, of course, significantly different . . . ."). "[T]he distinction is between an unintended configuration [a manufacturing defect], and an intended configuration that may produce unintended and unwanted results [a design defect]." Harduvel v. Gen. Dynamics Corp., 878 F.2d 1311, 1317 (11th Cir. 1989). As the Restatement explains in its commentary:

> [A] manufacturing defect is a departure from a product unit's design specifications. More distinctly than any other type of defect, manufacturing defects disappoint consumer expectations. Common examples of manufacturing defects are products that are physically flawed, damaged, or incorrectly assembled. In actions against the manufacturer, under prevailing rules concerning allocation of burdens of proof the plaintiff ordinarily bears the burden of establishing that such a defect existed in the product when it left the hands of the manufacturer.

Restatement (Third) of Torts: Product Liability § 2 cmt. c (1998).

When it took up the directed verdict motion at trial, the district court noted Linden waived his manufacturing defect claim in his written response to the motion. Linden's counsel responded that his filing was in error and then argued that the evidence of a manufacturing defect was "twofold":

> First, there was evidence that . . . the ejector holder had a loose fit, and the testimony of the IMMI witness was that it was supposed to have a tight fit. The loose fit can cause it to fail secondary to fatigue. So there was evidence of that.

> The second evidence of a manufacturing defect is that apparently IMMI claims that they wanted to put an adequate level of UV protectant in

their materials. That's what [CNH expert witness] Mr. Byam said. Our evidence shows that there was not an adequate level of UV protectant in the materials to serve the intended purpose.

(Trial Tr., Apr. 6, 2011, at 1367-68.)

Linden's counsel never pointed to evidence to support the manufacturing defect theory he now asserts on appeal that the buckle case was not strengthened by polycarbonate. Under these circumstances, any error as to that particular theory of a manufacturing defect is deemed waived. See United States v. Elliot, 89 F.3d 1360, 1367 (8th Cir. 1996) (failing to raise argument before the trial court results in waiver of the argument on appeal).[4]

As to the remaining two theories of manufacturing defect, the district court's assessment of the evidence presented at trial is particularly apt:

[W]ith regard to UV stabilization, there's no question in this record that IMMI did precisely what they intended to do with the manufacturing process. You're just saying they didn't do enough. That's a design question. That's not an error in manufacturing.

---

[4] Linden argues in his response brief that the Court should still consider the polycarbonate defect argument because "[t]here is no requirement that this Court . . . consider only the argument of counsel" below. We decline to do so here. Like a Rule 56 motion, it was incumbent upon Linden to direct the trial court to evidence in the record to defeat CNH's directed verdict motion. However, his written response to the Rule 50 motion stated he was waiving his manufacturing defect claim. At the hearing on the motion, Linden's counsel informed the court that the waiver was the result of a clerical error and then proceeded to make two arguments about manufacturing defect, neither of which were based on the alleged polycarbonate defect now raised on appeal. The district court should not be expected to look beyond those arguments to anticipate a third theory of a manufacturing defect not squarely raised by Linden.

With regard to the ejector holder and whether or not there was a loose fit, the record in this case – the total record in this case is that to the extent that there's any loose fit, it's within tolerance. So, again, with regard to that one, it seems to me that there's a complete factual failure with regard to a claim for manufacturing defect with regard to the ejector holder and the loose fit.

(Trial Tr., Apr. 6, 2011, at 1370.) Although Linden attempts to frame these alleged flaws as manufacturing defects, they are properly characterized as design defects. He has not pointed to sufficient evidence in the record that would support his claim the product manufactured by CNH "departed from its intended design" and did not meet its "design specifications." Accordingly, we affirm the district court's dismissal of the manufacturing defect claims.

## C. Jury Instructions

Linden next asserts the district court erred in giving three jury instructions offered by CNH and in failing to give one instruction offered by Linden. At trial, Linden timely objected to each instruction. "We review a district court's jury instructions for an abuse of discretion." McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 744 (8th Cir. 2010). As we have previously explained:

A district court possesses broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity. Our review is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case. When sitting in diversity, a district court's jury instructions must fairly and adequately represent the law of the forum state. The jury should receive instructions on issues supported by competent evidence in the record;

the trial court is not required to instruct on issues that do not find support in the record.

Id. (citing Brown v. Sandals Resorts Int'l., 284 F.3d 949, 953 (8th Cir. 2002)) (internal quotation marks omitted). Although we review each challenged jury instruction in turn, we will "reverse only if, when viewed in their entirety, the jury instructions contained an error or errors that affected the substantial rights of the parties." Shelton v. Kennedy Funding, Inc., 622 F.3d 943, 957 (8th Cir. 2010) (citation and internal alteration marks omitted).

## i. "Sophisticated User" Instruction

Linden challenges the "sophisticated user" instruction supplied by CNH. The instruction stated:

> In considering Plaintiff Linden's claim of inadequate instructions or warnings, consider the rule of the 'sophisticated user,' which states that Defendant CNH did not have a duty to warn Plaintiff Linden if you find Plaintiff Linden knew or should have known of the potential danger posed by the bulldozer.

Linden argues the instruction is erroneous because it broadly defines "the potential danger" to be avoided as the "bulldozer" rather than "that the buckle would fail."

Iowa has adopted section 388 of the Restatement (Second) of Torts, which addresses a manufacturer's duty to warn of the dangers associated with the use of its products and which embodies the "sophisticated user doctrine." Bergfeld v. Unimin Corp., 319 F.3d 350, 353 (8th Cir. 2003). Pursuant to the doctrine, a manufacturer has "'no duty to warn if the user knows or should know of the potential danger,

especially when the user is a professional who should be aware of the characteristics of the product.'" Id. (citation omitted).

> This rule of the 'sophisticated user' is no more than an expression of common sense as to why a party should not be liable when no warnings or inadequate warnings are given to one who already knows or could reasonably have been expected to know of the dangers of [a particular product]. Otherwise, it would be an effort to shift liability to one who had no duty to act. We expect the law in ordinary circumstances to apply a common sense rule.

Crook v. Kaneb Pipe Line Operating P'ship, L.P., 231 F.3d 1098, 1102 (8th Cir. 2000).

The challenged instruction adequately expresses the sophisticated consumer rule. Because Linden was a bulldozer operator, the jury was properly allowed to consider whether he had particularized knowledge that would have alerted him to the dangers of his activities on the bulldozer—including any danger that the buckle might fail. While the instruction could have been modified to more specifically identify the seatbelt failure as the potential danger to be avoided, the instruction given did not hinder Linden from arguing that he was unaware that the seatbelt might fail. See Nutrisoya Foods, Inc. v. Sunrich, LLC, 641 F.3d 282, 288-89 (8th Cir. 2011) (finding district court did not abuse its discretion in giving jury instructions that failed to distinguish between breach of single installment versus breach of entire installment contract where instructions "did not hinder" defendant from making such a distinction). Accordingly, we find no error based on this instruction.

ii. "Premature Wear" Instruction

The district court gave CNH's proposed instruction relating to premature wear. The instruction stated:

> There is no duty upon a manufacturer to furnish a product that will not wear out; however, age and type of use of a product are relevant to your inquiry in determining whether the bulldozer with its component parts was defective in its design or warnings and instructions.

The instruction was derived from Hawkeye-Security Ins. Co. v. Ford Motor Co., 174 N.W.2d 672 (Iowa 1970), in which the Iowa Supreme Court stated that the age and type of use of a product may be considered relevant factors as to whether the failure of the product was attributable to a defect. See id. at 681.

Linden asserts the premature wear instruction should not have been given, but if it was, the court should also have given his requested instruction that "when selecting a proper design, a manufacturer must contemplate probable results of a normal use of the product or a use that can reasonably be anticipated." Linden claims that this additional language was required to "adequately present the appropriate Iowa law, under which a product that functions appropriately upon leaving the Defendant's hands may yet still be defective if it is destined to fail down the road as a result of a design defect or lack of maintenance instructions or replacement guidelines."

We are unconvinced the instruction is an inaccurate statement of Iowa law or that the failure to include Linden's proposed language resulted in prejudice. See Warren v. Prejean, 301 F.3d 893, 900 (8th Cir. 2002) (noting that parties must demonstrate prejudice to show their substantive rights have been affected by instructional error). The instruction given fairly and adequately represents the rule

-12-

set forth in Hawkeye that a factfinder may take into account the age and type of use of a product in considering whether a product's failure was the result of a defective design. Although a "normal use" instruction may also have been warranted in this case, we are unable to find Linden was prejudiced by the district court's failure to give such an instruction. Linden claims he was prejudiced because "the jury was not allowed to consider the need for any warning or instruction relating to the use of a product after it is 'worn out.'" To the contrary, the jury was specifically instructed that it could consider whether CNH was negligent in failing to warn users about using the seatbelt later in time. During the jury charge, the district court gave a separate instruction which asked the jurors to consider whether the foreseeable risk of harm could have been reduced if "[t]he instructions or warnings . . . required inspection and monitoring of the seatbelt itself," and if "[i]nstructions . . . [were] conspicuously placed in the seat belt itself that require belt replacement every three years regardless of apparent condition." Accordingly, no reversible error resulted.

### iii. "Safety Code" Instruction

The district court gave CNH's proposed instruction relating to compliance with safety codes and customs. The instruction stated:

> You have received evidence of SAE J386. Conformity with the provisions of a safety code is evidence that Defendant CNH was not negligent and non-conformity is evidence that Defendant CNH was negligent. Such evidence is relevant and you should consider it, but it is not conclusive proof.

Linden argues the instruction was erroneous because there was no evidence that SAE J386 was a safety code. The J386 standard was drafted by the Society of

-13-

Automotive Engineers and is a standard applicable to off-road seatbelts.[5] The model Iowa Civil Jury Instruction 700.11 directs that a "Safety Code" or "Custom" may be considered by the factfinder in considering whether a manufacturer was negligent. See Doty v. Olson, 795 N.W.2d 99 (Iowa Ct. App. 2010) (unpublished opinion). Even if SAE J386 is more properly termed a "custom" instead of "safety code," the instruction still fairly and adequately characterizes Iowa products liability law. See Langner v. Caviness, 28 N.W.2d 421, 423 (Iowa 1947) ("Conformity with custom is some proof of due care and nonconformity some proof of negligence.").

Linden also argues that SAE J386 does not set a standard for seatbelts in cases like the present one, where over ten years have elapsed from the date of manufacture. He argues that "whether the seat belt was in compliance with SAE J386 at the time of manufacture was not helpful to the trier of fact and should not have been used to judge Defendant's liability toward Plaintiff Linden." However, the instruction does not invite the jury to view evidence relating to the J386 standard through the limited lens offered by Linden. Instead, the instruction correctly informs the jury that it may take into consideration CNH's compliance with an industry standard in determining whether CNH acted negligently. See Brown v. Cedar Rapids & Iowa City Ry. Co., 650 F.2d 159, 163 (8th Cir. 1981) (noting national trend "favors admission of industry or voluntary association codes" "as showing an acceptable standard of care"). The district court properly instructed the jury on the law of negligence and did not abuse its discretion in giving the safety code or custom instruction. See Moses v. Union Pacific R.R., 64 F.3d 413, 419 (8th Cir. 1995) (rejecting plaintiff's argument that evidence of defendant's compliance with railroad safety rules was

---

[5] SAE J386's stated purpose is to provide "minimum requirements for a pelvic restraint belt suitable for use primarily on crawler and wheel-tractors, tractor-scrapers, loaders, and graders." The scope of its "recommended practice covers the general requirements for webbing, buckle hardware, adjustment hardware, attachment hardware, and anchorages of the restraint system."

irrelevant and prejudicial where district court properly instructed juror on law of negligence and where compliance with rules was "some evidence that the railroad ha[d] acted in a generally non-negligent fashion").

### iv. "Manufacturer Expert in its Field" Instruction

Linden asserts the claimed error from the "sophisticated user" instruction was compounded by the district court's refusal to give a requested jury instruction that Linden modeled after Olson v. Prosoco, 522 N.W.2d 284, 289-90 (Iowa 1994).  The requested instruction stated:

> With regard to Thomas Linden's "inadequate instructions or warnings" claim and his "inadequate post-sale instructions or warnings" claim, in deciding what CNH knew or should have known, a product manufacturer is held to the standard of care of an expert in its field. Therefore, the question is whether a reasonable manufacturer knew or should have known of the danger, in light of the generally recognized, and prevailing, best scientific knowledge, yet failed to provide adequate warning to users or consumers.

Even assuming arguendo that the proposed instruction was a correct statement of the law, Linden has failed to demonstrate that the failure to give the requested instruction caused the jury instructions as a whole to not fairly and adequately represent the law of the forum state, or that the alleged error sufficiently prejudiced him to require reversal.  See Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001) ("We will order a new trial only if the error 'misled the jury or had a probable effect on its verdict.'" (citation omitted)); see also EEOC v. Atl. Cmty. Sch. Dist., 879 F.2d 434, 437 (8th Cir. 1989) ("Jury instructions are subject to the 'harmless error' rule requiring a determination of whether the error affected the 'substantial rights of the parties.'" (citations omitted)).  Overall, the jury was properly

instructed in accordance with Iowa law regarding Linden's inadequate instructions or warnings claim, and Linden was permitted to argue to the jury that CNH had a duty to provide adequate warnings. Accordingly, we find no adequate reason to disturb the jury verdict.

## D. Failure to Strike Prospective Juror

In his final claim of error, Linden points to the district court's failure to strike Prospective Juror Wild for cause. During voir dire, Linden moved to have Wild dismissed for cause, but the district court denied his motion. At the conclusion of voir dire, Linden exercised one of his peremptory strikes to remove Wild from the jury. "We review denial of strikes for cause under an abuse of discretion standard." Moran v. Clarke, 443 F.3d 646, 650 (8th Cir. 2006).

> The courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position.

Id. at 650-51 (internal citation omitted).

After review of the voir dire transcript, we agree that Wild should have been dismissed by the trial court for cause. In his response to questioning, Wild indicated he would place a greater burden on Linden in order to award pain and suffering damages and Linden would have to overcome a presumption that the accident was not Linden's own fault. Because Wild was never rehabilitated by counsel or the court, the district court should have dismissed him for cause.

The question then becomes whether the failure to dismiss Wild for cause constituted reversible error. Linden relies exclusively on United States v. Amerson, 938 F.2d 116 (8th Cir. 1991). However, Amerson does not control.

In Amerson, four prospective jurors admitted they would have a bias in favor of police officer testimony yet the district court refused to dismiss the jurors for cause. We reversed and granted the defendant a new trial, stating that "[w]hen jurors express this kind of bias, the district court must either excuse the jurors for cause, or by instructions and additional questions convince the jurors that there is no special credence due the testimony of police officers." Amerson, 938 F.2d at 118 (citation and internal alterations omitted). Our decision in Amerson did not explicitly deal with the issue of whether a peremptory challenge used on a juror who should have been removed for cause "mooted" any error by the district court. However, in United States v. Sithithongtham, 192 F.3d 1119 (8th Cir. 1999), we undertook a thorough review of the Amerson case file and concluded that a holding on that issue could be gleaned sub silentio:

> We have examined the briefs and record in Amerson, and in fact those jurors were removed by peremptory challenges made by the defendant. Notwithstanding this fact, the Amerson court reversed the conviction. As a matter of logic, this must mean that the Amerson court thought it was not important whether these biased jurors sat or not. It must mean that the Amerson court believed (though without saying so) that erroneously requiring a defendant to use a peremptory challenge is an error reversible per se, a structural error, so to speak.

Sithithongtham, 192 F.3d at 1123.

Even if the sub silentio portion of the Amerson decision was a holding to be reconciled by this Court, the Supreme Court's decision in United States v.

Martinez-Salazar, 528 U.S. 304 (2000), overrules it. In Martinez-Salazar, the Supreme Court focused on a case with the following "sequence of events: the erroneous refusal of a trial judge to dismiss a potential juror for cause, followed by the defendant's exercise of a peremptory challenge to remove that juror." 528 U.S. at 307. In addressing a Ninth Circuit decision that held that the failure to dismiss a biased juror for cause required the automatic reversal of a conviction, the Supreme Court reached the opposite conclusion: "[I]f the defendant elects to cure such an error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right." Id. In so holding, the Supreme Court noted that "peremptory challenges are not of federal constitutional dimension." Id. at 311. The Court then discussed the logic behind its holding:

> A hard choice is not the same as no choice. . . . The District Court did not demand—and Rule 24(b) did not require—that Martinez-Salazar use a peremptory challenge curatively. In choosing to remove [prospective juror] Gilbert rather than taking his chances on appeal, Martinez-Salazar did not lose a peremptory challenge. Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury. . . . Moreover, the immediate choice Martinez-Salazar confronted—to stand on his objection to the erroneous denial of the challenge for cause or to use a peremptory challenge to effect an instantaneous cure of the error—comports with the reality of the jury selection process. Challenges for cause and rulings upon them . . . are fast paced, made on the spot and under pressure. Counsel as well as court, in that setting, must be prepared to decide, often between shades of gray, by the minute.

528 U.S. at 315-16 (internal citations and alterations omitted); see also Walzer v. St. Joseph State Hosp., 231 F.3d 1108, 1111 (8th Cir. 2000) (finding no reversible error under Martinez-Salazar where trial court failed to dismiss prospective juror for cause

but where the prospective juror was dismissed pursuant to defendants' peremptory challenge).[6]

While we agree the district court erred in failing to dismiss Wild for cause, the error was harmless because Wild was dismissed by way of one of Linden's peremptory strikes. Because Linden is unable to show that he was prejudiced by the trial court's refusal to dismiss Wild, the jury verdict must be upheld.

III. Conclusion

Linden had a fair and adequate opportunity to make his best arguments to the jury, and the trial court properly allowed those claims that were supported by the evidence to be determined by the fact finder. Although Linden would like a second opportunity to retry his claims, we are unable to agree with him that any action by the district court amounted to reversible error. Accordingly, we affirm.

_____

[6] In Martinez-Salazar, the Supreme Court noted there was a corresponding conflict in the circuit courts in the civil context on the same issue it faced in the criminal context. 528 U.S. at 311 n.1. The Court did not discuss whether the rule would be different in a criminal versus a civil case. Linden suggests that a civil case may be different because a defendant and a plaintiff start off with the same number of peremptory strikes, as opposed to a criminal case where a defendant usually starts off with more challenges than the government. Given this Court's precedent in civil cases such as Walzer v. St. Joseph State Hospital, 231 F.3d 1108, 1111 (8th Cir. 2000), and Moran v. Clarke, 443 F.3d 646, 651 n.3 (8th Cir. 2006) (noting that district court's failure to strike prospective juror for cause was moot because prospective juror was removed by peremptory challenge), we are unconvinced a more stringent rule should apply in a civil case than in a criminal case.