BUSH, RECEIVER ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* TAYLOR.

Opinion delivered October 22, 1917.

1. RAILROADS—DAMAGE BY FIRE—SPARKS FROM LOCOMOTIVE—PROOF OF OTHER FIRES.—In an action for damages caused by a fire alleged to have been set out by defendant's locomotive engine, evidence is admissible showing that other fires had been set out by railroad engines in the vicinity of the fire involved in this litigation.

2. DAMAGES—LOSS OF PROPERTY BY FIRE—SPARK FROM ENGINE.—A sawmill was destroyed by fire, together with the building that housed it, together with certain lumber and personal property; it

was alleged that the fire was caused by a spark from an engine. In determining the measure of damages, the following rule is to be applied: If the value of the property destroyed depends upon its connection with the soil, the measure of damages is the difference in value of the land before and after the fire; if the property destroyed can be replaced in substantially the condition in which it existed before the fire, then the measure of damages is the cost of so replacing it.

Appeal from Clay Circuit Court, Eastern District; *W. J. Driver,* Judge; reversed.

*Daniel Upthegrove, J. R. Tubney* and *Hawthorne & Hawthorne,* for St. Louis Southwestern Railway Company.

*Troy Pace* and *Gordon Frierson,* for Bush, Receiver.

1.  The court erred in permitting witnesses to testify as to the occurrence of other fires at different times.  52 C. C. A. 95; 114 Fed. 133; 27 Fla. 1; 15 S. E. 828; 78 N. E. 838; 53 N. E. 1078; 98 Penn. 316; 60 Atl. 581; 70 S. W. 999; 42 N. H. 97; 12 N. Y. Supp. 1046; 76 *Id.* 171; 67 Hun (N. Y.) 179; 48 S. E. 521; 17 N. W. 132; 78 Pac. 828; 56 *Id.* 286; 52 Ark. 105.

2.  The court erred in instructing the jury that the measure of damages was the difference in the value of the land immediately before and after the fire.  59 Ark. 105; 8 R. C. L., § 46, p. 484; 33 Cyc. 1389; 65 N. E. 249; 61 E. C. L. 250; 48 Am. Dec. 401; 44 S. W. 802; 33 S. W. 615; 97 *Id.* 727; 20 S. E. 129; 77 N. W. 517; 47 N. W. 146; 41 Pac. 1051; 31 N. E. 997.

*L. Hunter* and *Holifield & Harrison,* for appellee.

1.  Evidence of other fires occurring was admissible. 59 Ark. 105; Act 141, Acts 1907; 121 Mo. 340; 25 S. W. 936; 42 Am. St. 530; 25 L. R. A. 175; 10 Enc. of Ev. 551, and note; 91 U. S. 47a; 23 L. Ed. 362; 14 N. Y. 223; 67 Am. Dec. 155; 10 Jur. 571; 3 Mann & Gr. 515; 32 N. Y. 339; 49 *Id.* 421; 10 Am. Rep. 389; 63 N. H. 25; 3 C. C. A. 264; 52 Fed. 711; 10 U. S. App. 375; 85 Me. 509.

2.  The court properly instructed the jury as to the measure of damages.  8 R. C. L., § 46, p. 484; 119 Ark.

143; 59 Ark. 105; 36 *Id.* 205; 67 *Id.* 371; 16 S. W. 998; 35 *Id.* 662.

SMITH, J. The Iron Mountain Railway Company ran certain of its freight trains over the tracks of the Cotton Belt Railway Company through the town of Rector, one of which, according to the contention of appellee, set fire to his mill and destroyed it. On appellee's part there was proof of the absence of any cause for the fire except from sparks thrown out by a passing engine. It was shown that a heavy train, of seventy or eighty cars, stopped at a tank, at a distance of twenty or thirty car lengths from the mill, to take water, and that fifteen or twenty minutes thereafter the mill was discovered afire, and that at the nearest point the track was only eighty feet from the mill, and that a strong wind was blowing at the time in the direction to carry the sparks from the engine to the mill.

Over appellant's objection, evidence was admitted showing that other fires had been set out by railroad engines in the vicinity of the fire involved in this suit. But there was no evidence that the particular engine, or any engine of the Iron Mountain Railway Company, had previously set out a fire. Nor was there any evidence that this engine was equipped with a spark-arrester differing in any manner from those used by other engines on either the Iron Mountain or the Cotton Belt railway.

The complaint itemized the property destroyed by fire, and alleged its value, and witnesses testified as to the value of the various articles so destroyed. Among other property destroyed was seven or eight thousand laths, some gum logs, two thousand feet of gum box boards, two thousand feet of cypress, and fifteen hundred feet of poplar lumber, together with various kinds of saws, and the engine, boiler and other fixtures, together with the building under which these things were housed. Other witnesses were permitted to testify to the difference in the value of the land before the fire and afterwards.

Over appellant's objection, an instruction was given which told the jury that the measure of damages was the difference in value of the land immediately before and immediately after the fire, whereas appellant asked the court to charge the jury on that subject as follows: "The plaintiff is limited in his recovery in this action to the reasonable market value of the property entirely destroyed, and to the difference between the reasonable market value of the property destroyed immediately before the fire and the sum it would cost to restore the damaged property to its original condition and the value of the use of property until it could be restored with ordinary care."

We presume that the last part of this instruction refers to property partially destroyed.

(1)   In the case of *Railway Co. v. Jones*, 59 Ark. 105, it was said: "And it was inadmissible to show that other engines had set fire to materials on or near the right-of-way, as a circumstance to show that the engine which caused the fire on this occasion, or its appliances, were defective or in bad condition. For such purpose the proof would have to be confined to fires caused by the engine that is said to have caused the fire that burned the appellant's meadow."

The language of that opinion must be read, however, in connection with the issue there being considered. It was there sought to be shown that the railway company had negligently set out a fire, and in that connection it was said that it could not be shown that other engines had set out a fire as a circumstance to show that the engine which caused the fire in question was equipped with defective appliances, but that for such purposes the proof would have to be confined to fires caused by the engine which set out the fire in question. In this opinion, however, it was said:

"The evidence that other fires had occurred on the line of the railroad than the one which destroyed the plaintiff's meadow was improperly admitted, as it was not shown that these fires were caused by the engines of

the railroad, or that they occurred from the operation of its trains. If this had been shown, it might have been admissible as a circumstances tending to show that the condition of the right-of-way of the railroad was such that a fire might have occurred from sparks escaping from its engines, and igniting the dry grass and inflammable material on its right-of-way. But the fact that other fires had occurred, without proof that they were caused by the railroad, was inadmissible.''

The question of negligence is not involved in this case, and the jury was required only to find the origin of the fire, and if that responsibility was placed on the railroad company, liability for the damage resulting attached without regard to the question of negligence. Act 141 of the Acts of 1907, page 336.

This evidence was offered ''as a circumstance tending to show * * * that a fire might have occurred from sparks escaping from the engine'' which passed the mill shortly before the fire occurred. Of course, there must be such substantial similarity of conditions in the proof of other fires as to make it reasonable and probable that the same cause existed to produce the same result. This similarity of condition existed here, as the testimony objected to related to a fire set out in grass near the mill ''within a morning or two of the fire which destroyed the mill.'' And no attempt was made to show that any difference existed in the equipment of the engines to arrest the emission of sparks.

The identical question here raised was considered and decided by the Supreme Court of Missouri in the case of *Campbell* v. *Missouri Pacific Ry. Co.*, 25 L. R. A. 175, 25 S. W. 936, 121 Mo. 340. There the testimony objected to was that other fires, both before and subsequent to the one in question, at different places on the line of defendant's railroad, had been started by sparks from some of defendant's engines. Here we have a much closer similarity of conditions as a predicate for the admission of the questioned testimony, for here both fires were set out in the same lot and within a day or two of

each other. But, under the facts stated, the Supreme
Court of Missouri, upon a review of the authorities, held
the evidence admissible. Among other cases cited and
quoted from was the case of *Grank Trunk R. Co.* v. *Rich-
ardson*, 91 U. S. 470, 23 L. Ed. 362, as follows:

"Mr. Justice Strong, who wrote the opinion of the
court, says: 'The question has often been considered by
the courts of this country and in England, and such evi-
dence has, we think, been generally held admissible, as
tending to prove the possibility, and consequent probabil-
ity, that some locomotive caused the fire.' He follows
this statement of the law by a number of citations, both
English and American, including the case of *Sheldon* v.
*Hudson River R. Co.*, 14 N. Y. 223, 67 Am. Dec. 155. Fur-
ther on in the same opinion the judge says: 'The par-
ticular engines were not identified, but their crossing
raised at least some probability, in the absence of proof
of any other known cause, that they caused the fire; and it
seems to us that, under the circumstances, this probabil-
ity was strengthened by the fact that some engines of the
same defendant, at other times during the same season,
had scattered fire along their passage.' To the same
effect are the following cases: *Smith* v. *Boston & M. Rd.*,
63 N. H. 25; *Chicago, St. P. M. & O. R. Co.* v. *Gilbert*, 3
C. C. A. 264, 52 Fed. Rep. 711, 10 U. S. App. 375;
*Thatcher* v. *Maine Central R. Co.*, 85 Me. 509.''

The Supreme Court of Missouri concluded its review
of the authorities cited with the following statement:
"We think the evidence tended to prove the possibility,
and consequent probability, that the fire was communi-
cated to plaintiff's property from one of defendant's en-
gines, and that the evidence was admissible, and its pro-
bative force was for the determination of the jury. If
the issue had been of negligence in the construction or
management of the engine only, and the engine which
could only have caused the damage had been clearly iden-
tified, evidence that other engines emitted sparks and set
fires would have been inadmissible under the decisions of
this court. *Coale* v. *Hannibal & St. J. R. Co.*, 60 Mo. 227;

*Patton* v. *St. L. & S. F. Rd. Co.,* 87 Mo. 117, 56 Am. Rep. 446. But, in case the fact whether the fire originated from the engine was alone in issue, and there was no direct proof of the fact, it seems very clear that such evidence would have some tendency to prove that issue. The evidence was all circumstantial, and the facts testified to were circumstances, though slight they may have been, bearing upon the issues." See also *Railway Company* v. *Harrell,* 58 Ark. 455.

We concur in the reasoning of that court as applied to the facts of this case, and hold that no error was committed in the admission of the testimony objected to.

We think the court should have instructed the jury on the question of the measure of damages in accordance with the contention of appellant. Here a portion of the property destroyed was lumber and logs and laths, and certain other personal property, the value of which and the damage to which was in nowise dependent upon the value of the land or the damage to it.

It is true this court held, in the case of *K. C. S. R. Co.* v. *Wilson,* 119 Ark. 143, where a fire set out in a pasture burned the grasses and grain growing thereon and the fence enclosing it, that the measure of damages was the difference in the value of the pasture before the fire and after the fire. And the same measure of damages was approved in the case of *Mo. & N. Ark. Rd. Co.* v. *Phillips,* 97 Ark. 54, where the property destroyed was an orchard. But these cases must, of course, be read in the light of the facts there recited, and we must have in mind the character of the property there destroyed.

In the case of *St. L., I. M. & S. R. Co.* v. *Ayres,* 67 Ark. 371, it was said that the measure of damages for the destruction of trees on the land by fire was the difference between the value of the land with the trees unburned and with the trees burned. After announcing this measure of damages, the court gave, as a reason therefor, that the trees were a part of the freehold and could not be replaced in a short time and only at considerable expense, and that

"the destruction of the trees was a depreciation in the value of the land, of which they were a part."

In 8 Ruling Case Law, page 484, the measure of damages for the destruction of property attached to the realty is discussed. It is there said: "Section 46. Property Attached to Realty.—In cases of injury to real estate the courts recognize two elements of damage; first, the value after separation from the freehold, if any, of the thing taken, injured or destroyed; and, second, the damage to the realty, if any, occasioned by the severance. The measure of damages in such cases depends to some extent on the character of the property taken or destroyed—a distinction being often made between property whose chief value consists in its connection with the soil and its incidental enhancement of the value of the land, and those improvements which may be replaced at will, and whose value may readily be determined, apart from the ground on which they rest. Thus, if the property destroyed or injured is so closely connected with the real estate on which it stands or to which it is attached that it has no value separate from and independent of the real estate, or if the injury is to the soil itself, the measure of damages is the difference in value between the real estate before the injury and after it. On the other hand, the value of the property destroyed, or the cost of restoring or replacing such property, is the proper measure of damages for the destruction of buildings, fences and other improvements, which may at once be replaced, where the exact cost of restoring the property destroyed is capable of definite ascertainment, and where there is no damage to the realty itself. Added to this, the right is generally given to recover for the loss of the use of the property. Some courts hold that where property attached to the realty is destroyed, the owner has his election to sue either for the value of the thing destroyed or for the injury to the freehold, or, in other words, he may seek to recover the value of the destroyed property in its detached form or its value as a part of the realty. If recovery is sought for the value of the property destroyed in

its detached form, the measure of damages is its market value when so detached; but if recovery is sought for the injury to the freehold by reason of the taking or destruction of property attached thereto, the measure of damages is the difference between the value of the land before and after the injury. There is considerable conflict of authority in the application of the foregoing rules to cases where a recovery is sought for the destruction of growing crops. In some cases it is held that the proper measure of damages is the value of the crop at the time and place and in the condition it was in when it was destroyed, and in others that it is the difference in the value of the land on which the crop is growing. A similar conflict exists in the case of trees, some courts holding that the measure of damages is the difference in the value of the land before and after the injury; while others hold that the value of the trees destroyed is the proper measure of damages. It has been held that damages caused by the destruction of fruit trees may be measured by estimating either their value as a distinct part of the land, or the difference in value of the land before and after their destruction; and that where both methods are resorted to in the same case, the damages must be ascertained by the jury from all the evidence.''

In the note to the text quoted many cases are cited bearing upon this subject, several of which are annotated cases.

In a suit for damages for the destruction of a house by fire, the Supreme Court of Iowa, in holding that the measure of damages was the value of the house, said: ''The fundamental principle in all actions for damages is that just compensation be made to him who has suffered injury from another in his person or property, and, in order to give satisfaction, measured in money, such rules are formulated as are thought best adapted to accomplish this purpose. A distinction has, for this reason, been made between growing crops, shrubs, and trees, whose chief value is because of their connection with the soil and their incidental enhancement of the value of the

land, and those improvements which may be replaced at will, and whose value may be readily determined, apart from the ground on which they rest.'' *McMahon* v. *Dubuque,* 77 N. W. (Iowa) 517.

In 33 Cyc., pages 1389, 1390 and 1391, many cases are cited which deal with the measure of damages for property destroyed by fire, and in the text of this article it is said:

''Where buildings are injured or destroyed it is ordinarily held that they are capable of a separate valuation and that the measure of damages is the value of the property at the time of its destruction.''

All of the cases cited in the note to this text supported it, and none approved a different measure of damages.

(2)    We think our own cases, when construed in connection with the facts to which the principles there announced were applied, result in the following statement of the law.    That, if the value of the property destroyed depends upon its connection with the soil, the measure of the damages is the difference in the value of the land before and after the fire.    But, if the property destroyed could be replaced in substantially the condition in which it existed before the fire, then the measure of the damages is the cost of so replacing it.

The case of *Dodd* v. *Read,* 81 Ark. 13, is not in conflict with this view, but is in harmony with it.    That was a suit for damages for the value of a building, and it was there said that the true inquiry was as to the cash market value of the building, and the opinion recites the evidence of the carpenter who was the only witness for the plaintiff on the subject of value and who testified that the house was worth only two hundred dollars, and a remittitur was ordered of the part of the judgment in excess of that sum. See, also, *St. L. & S. F. Rd. Co.* v. *Shore,* 89 Ark. 418; *K. C. So. Ry. Co.* v. *Boles,* 88 Ark. 533; *Dwight* v. *Elmira, etc. R. R. Co.,* 15 L. R. A. 612.

The facts of this case show, not only the wisdom and justice, but the necessity, for the rule we now approve.

Much of the property destroyed was not even fixtures, and under the measure of damages given by the court, the jury could not properly have allowed compensation for its destruction. No contention was made that the land itself had sustained any damage; but the property destroyed was a sawmill with the building which housed it and the numerous articles of purely personal property used in connection therewith, the value of which was testified to by the witnesses, and which included, among other things, some lumber which had been manufactured on the very day of the fire. The plaintiff was entitled to compensation for this property, although the measure of damages given would not have warranted its assessment; yet, according to appellant, these damages were allowed, together with damages which exceeded the value of the property destroyed when estimated under the rule here approved; and, as we can not affirmatively say that such is not the case, we must reverse the judgment and remand the cause for a new trial.