CHICAGO, ROCK ISLAND & PACIFIC RAILROAD CO. v.
LOIS A. LYNCH, INDIVIDUALLY AND AS EXECUTRIX OF THE
ESTATE OF JUDE J. LYNCH, DECEASED

5-4931 441 S.W. 2d 793

Opinion Delivered June 9, 1969

*Wright, Lindsey & Jennings* by *William R. Overton* for appellant.

*Herrod & Cole* for appellee.

CONLEY BYRD, Justice. In a wrongful death action by appellee, Lois A. Lynch, individually and as executrix of the estate of Jude J. Lynch, deceased, against appellant Chicago, Rock Island & Pacific Railroad Co., the

jury returned a verdict finding the railroad 61% negligent and appellee's decedent 39% negligent. By proper motion the railroad has raised in this court the sufficiency of the evidence to sustain the verdict.

The record shows that the railroad tracks in the city of Carlisle run east-west, with the main line being immediately north of a team line. Highway 13 crosses the railroad at right angles in a north-south direction. At the time of the collision, appellee's decedent was driving north on Highway 13 when he was struck by a westbound freight train. The testimony when stated most favorably to appellee shows that the railroad grade crossing is frequently used by the traveling public, that trains pass over it at least five times a day, and that because of the surrounding circumstances, such as parked boxcars, a reasonably careful person could not use the crossing with safety in the absence of special warnings. However, it is on the issue of special warnings that we find appellee's evidence to be insufficient to support the verdict.

Appellee's and appellant's witnesses all state that decedent approached the crossing from the south slowly and without ever stopping. Three motorists headed south had stopped north of the tracks and were waiting for the train to pass. The motorist closest to the tracks was Billie Sue Perciful, behind her was Louis Lee and the third was Ethel Loftis. Louis Lee was called as a witness by appellee. Billie Sue Perciful and Ethel Loftis were called as witnesses by the railroad. All three stated that the signal lights on the north side of the tracks to warn southbound motorists were working. Gwendolyn Medford, a witness called by appellee, stated that she was about a block south of the crossing when she heard the impact and that when she parked her car near the signal lights for warning northbound motorists, the lights were blinking. Steve Carrick, a witness called by appellee, testified that he was on a motorcycle following right behind the decedent at the time of the accident.

Steve Carrick said that as he approached the track behind decedent the blinker lights were working but that he did not hear the bell on the north side of the track nor did he hear the train coming until he heard the air-brakes.

In addition to the foregoing testimony, Billie Sue Perciful says that she saw the decedent slowly approach the crossing without ever stopping and that he was hit while looking down the railroad tracks to his left.

In support of her contention that there was enough evidence on the insufficiency of the warning to go to the jury, appellee argues:

> "...Because of the objection of the railroad company we were not allowed to show what suggestions the Mayor and City Council made to the railroad company in regard to changing the signals or what the reasons were. But, even so the jury does not check its common sense when it goes into the jury box. Men of common sense know that Rock Island could have installed *gates* at the crossing or could have had a *flagman* at this crossing to warn of the abnormal dangers. The Court told the jury that if the crossing was abnormally dangerous, then the railroad company was required to use "ordinary care to give a warning sufficient to permit the traveling public to use the crossing with reasonable safety." The jury knew of *gates* and *flagmen*. The jury did not have to speculate about such safety measures. We insist that the evidence made a jury question as to whether this was an abnormally dangerous crossing where Mr. Lynch was killed: And that disposes of appellant's first point."

However we find that the decision in this case is controlled by *Missouri Pacific Railroad Company, Thompson, Trustee v. Carruthers, Admr.* 204 Ark. 419, 162 S.W. 2d 912 (1942), where we said:

"... Either he saw and heard these signals and the noise of the approaching train and thought he could beat it across, or he was preoccupied with something else and failed to see and hear what was plainly to be seen and heard and what every one else saw and heard, including his own witnesses. In either case, there can be no recovery, because his own negligence was the proximate cause of his death."

In view of the possibility of a new trial we think it necessary to comment upon the testimony introduced with reference to three other accidents at this crossing. The testimony shows that these accidents occurred in 1953, 1961 and 1964, all of which involved northbound motorists and westbound trains. In *Bush, Receiver* v. *Taylor*, 130 Ark. 522, 197 S.W. 2d 1172, 7 ALR 262 (1917), we pointed out that before such proof could be received, there must be a showing of such substantial similarity of conditions in the proof as to make it reasonable and probable that the same cause existed to produce the same result. The evidence here falls far short of the substantially similar conditions involved in *St. Louis Southwestern Railway Co.* v. *Jackson, Admr.*, 242 Ark. 858, 416 S.W. 2d 273 (1967). There the proof showed that the Jackson automobile was the third car in a two-week period to collide with a southbound train at the Fair Oakes crossing and that in each of the three collisions the automobiles were driving into the sun either toward the east in the morning or toward the west in the afternoon. In each instance the automobiles hit either the second or third diesel of a southbound train and in each instance the automobiles hit the train with considerable force after having skidded for a distance. Here the testimony with reference to other accidents is not only remote in time but there is little or no testimony to show that the same conditions existed at the time of each collision or that the automobiles were traveling under substantially similar conditions. Without attempting to itemize the many factors which might be introduced to

show the substantially similar nature of the prior accidents, we have mentioned enough here to demonstrate that the proof made was not sufficient to make it reasonable and probable that the same cause existed to produce all the accidents involved.

We come now to the question of whether to dismiss or remand. The motion of the Railroad Co. questioning the sufficiency of the evidence was both for judgment notwithstanding the verdict and for a new trial. Our procedure under Ark. Stat. Ann. § 29-111 (Repl. 1962) with reference to judgments n.o.v. is not exactly clear. See 17 Ark. L. Rev. 226. However, under the strongest interpretation given to a motion for judgment n.o.v., it constitutes nothing more or less than a request for directed verdict. We had the same issue before us in *St. Louis Southwestern Railway Co.* v. *Clemons*, 242 Ark. 707, 415 S.W. 2d 332 (1967), and we there pointed out that the general rule is to remand common law cases for a new trial. It is only in an exceptional case that reasons arise for a dismissal. Here there was an attempt to show that the Railroad had so operated its warning system that the traveling public had become justified in having a disrespect for the warnings given. Such evidence may be available. In accordance with the rule laid down in the *Clemons* case we remand this case for a possible new trial.

Reversed and remanded.