# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1009

———————

David R. Powell, Sr.,                          *
                                               *
        Appellee,                           *
                                               *    Appeal from the United States
    v.                                       *    District Court for the
                                               *    Eastern District of Arkansas.
TPI Petroleum, Inc.,                           *
                                               *
        Appellant.                          *

———————

Submitted: September 24, 2007
Filed: December 27, 2007

———————

Before WOLLMAN, HANSEN, and RILEY, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

       TPI Petroleum, Inc. (TPI), appeals from the judgment against it in a breach-of-contract case arising from TPI's removal of four underground storage tanks (the tanks) from realty it leased from David Powell, Sr. TPI argues that, *inter alia*, the evidence presented in the case was insufficient to prove breach or damages. We affirm the judgment with respect to the breach issue and reverse and remand for a new trial on the damages issues.

## I. Background

Over a twenty-year period beginning in April 1983, TPI and its predecessor leased realty from Powell and his predecessor for use as a gas station. When TPI's predecessor took possession of the property, it remodeled the existing gas station and replaced the fuel system and tanks. In 2003, TPI elected not to exercise its final renewal option under the lease and notified Powell that it intended to remove the fuel system, including the tanks. Powell disputed TPI's claimed ownership of the tanks and insisted that they remain with the realty. Following failed negotiations between the parties, TPI removed the tanks and had them destroyed.

Powell filed suit for breach of contract, complaining that the lease forbade TPI's removal of the tanks. The provisions of the lease prohibited waste, incorporated the law of fixtures, and addressed what additions and removals the lessee could make with respect to the property. The tanks were explicitly listed as items that could be added, but were not listed as items that could be removed. The district court entered judgment on the jury's general verdict for Powell and denied TPI's combined motions for judgment as a matter of law and a new trial.

## II. Analysis

A.     Motion for Judgment as a Matter of Law

As a threshold issue, Powell asserts that TPI waived post-trial consideration and appellate review of the issues contained in its motion for judgment as a matter of law (JAML) made at the close of Powell's evidence by failing to move for JAML again at the close of all evidence. We review for abuse of discretion the district court's decision to consider TPI's post-trial motion for JAML. Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 535 (8th Cir. 2006).

TPI's motion clearly falls within the BE & K exception to our requirement that a motion for JAML under Federal Rule of Civil Procedure 50(a) be made at the close of all evidence in order to be renewed post-trial under the version of Federal Rule of Civil Procedure 50(b) in effect at the time of TPI's motion.[1]  The BE & K exception rests on the district court's indication that the motion would not be waived, the short time before the close of all evidence, the small number of new witnesses following the motion, and the lack of additional evidence offered by the nonmovant.[2]  BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of Am., 90 F.3d 1318, 1325 (8th Cir. 1996).  In Raymond, we held that the exception applied when the district court flatly denied the Rule 50(a) motion without taking it under advisement, one day and two witnesses remained before the close of all evidence, and the district court considered the Rule 50(b) motion on the merits.  472 F.3d at 535-36.  In this case, the district court unequivocally deferred ruling on TPI's Rule 50(a) motion hours before the close of all evidence and explicitly permitted Powell to file a supporting brief to respond to the motion and to the single witness following it.  The facts in this case therefore fall more clearly within the BE & K exception than did those in Raymond.

Powell also argues for the first time on appeal that TPI's Rule 50(a) motion for JAML failed adequately to specify the law and facts defining the issues on which it sought judgment.  Powell's argument lacks merit, and we need not consider it further.

We agree with the district court that TPI did not waive its JAML issues, and we turn to the merits.

---

[1]Federal Rule of Civil Procedure 50(b) has been amended twice since the trial in this case.

[2]Although dicta in Mathieu v. Gopher News Co. asserts that we have never recognized the BE & K exception, 273 F.3d 769, 777 (8th Cir. 2001), the holdings in BE & K and the more recent case of Raymond do recognize it.  Raymond, 472 F.3d at 535-36; BE & K, 90 F.3d at 1325.

B.     Breach of Contract

To prevail on a breach-of-contract claim, a plaintiff must prove (1) the existence of a valid agreement; (2) the defendant's breach of that agreement; and (3) the plaintiff's damages resulting from the breach. Foreman Sch. Dist. No. 25 v. Steele, 61 S.W.3d 801, 807 (Ark. 2001). TPI does not dispute the validity of the lease, contesting only issues relating to the elements of breach and damages.

1.     Weight of the Evidence

TPI contends that Powell's evidence was insufficient to prove that TPI's removal of the tanks breached the lease agreement. TPI presented this argument in its initial Rule 50(a) motion for JAML. We agree with the district court's conclusion that JAML is inappropriate here because there is sufficient evidence to support a finding of breach, and thus decision on the issue would require weighing the evidence and assessing credibility.

Alternatively, TPI argued in its motion for a new trial that because the evidence overwhelmingly supported the conclusion that the tanks were trade fixtures, the jury ignored its instruction on trade fixtures when it issued its general verdict in Powell's favor. We review for abuse of discretion, and where, as here, "the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." Wash. Solutions, Inc. v. PDQ Mfg., 395 F.3d 888, 892 (8th Cir. 2005) (internal quotation omitted). Accordingly, we hold that the district court did not abuse its discretion in denying the motion for a new trial on the issue of breach.

First, we agree with the district court that the evidence did not overwhelmingly indicate that the tanks were trade fixtures. Applying Arkansas's test for determining whether an object is a fixture, and thus part of the lessor's realty, or a trade fixture,

and thus the lessee's chattel, we consider (1) whether the tanks were annexed to Powell's realty, (2) whether they were appropriate for or adapted to the realty's use, and (3) the objective intention of TPI's predecessor at the time of annexation. Pledger v. Halvorson, 921 S.W.2d 576, 577-78 (Ark. 1996). Intent is paramount and is inferred from the nature of the object and the mode of its annexation, the relationship between the parties, and the object's purpose. Id. at 578. That TPI's predecessor was a commercial tenant and that the tanks were used in its trade are factors that would support a finding that the tanks were trade fixtures. On the other hand, the tanks were also cumbersome structures buried under concrete on realty used as a gas station, which suggests that they were fixtures.

Furthermore, even if the tanks were considered to be trade fixtures, the jury could find from other provisions of the lease and from witness testimony that TPI had breached the lease. The question before the jury with respect to the issue of breach was whether the parties intended the lease to permit or to prohibit TPI's removal of the tanks.

Section 3.01 of the lease, entitled "Use of Premises," provides in relevant part that

> Tenant shall have the right from time to time, as it may desire, to build or rebuild such buildings, structures, drives and pump islands, and to install such storage tanks, pumps, lifts, hoists, and other equipment; and to make such other installations and constructions as it deems proper for the sale and distribution of petroleum products, automobile accessories and/or as a convenience store . . . .

Section 3.02, entitled "Removal of Property," provides that

> Tenant shall have the right at any time during the continuance of said Lease or within thirty (30) days after its termination, to sever and remove all pumps, machinery, compressors, and other any [sic] part of same. All such buildings, structures and improvements placed upon the leased

premises by Tenant during the continuance of said Lease of the kind and character normally deemed in law to become a part of the realty, shall be and remain the property of Landlord.

Whether the tanks were fixtures or trade fixtures may have been relevant to but was not determinative of the jury's finding of breach. The lease's explicit identification of tanks as items that could be added to the property and its silence as to their removal could be found to express the parties' intention that the tanks remain with the realty. The parties' use of the word "sever" to refer to the removable equipment could be found to imply permission to remove only above-ground equipment and not underground storage tanks. Additionally, the development manager who negotiated the lease for TPI's predecessor testified that the predecessor did not anticipate removing its tanks when it entered the lease.

2.    Instruction for Construal Against Drafter

TPI contends that the district court erred in refusing to give TPI's proposed instruction directing the jury to construe unresolved ambiguities against the contract's drafter. We review for abuse of discretion the district court's refusal to submit a requested instruction. Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001). The usage note to Arkansas Model Instruction 2424, upon which TPI's instruction was based, states that the instruction may be inappropriate where the contract's language was negotiated by both parties, and thus no party may be readily identified as the drafter. Ark. Model Jury Instruction—Civil 2424 (2007). Both parties contributed to the lease's language, and the ambiguities relevant to this case lie within and between sections to which both parties contributed. Sections 3.01 and 3.02 were part of the boilerplate lease contributed by TPI's predecessor. Powell testified that he may have modified Section 3.02 and that he added Section 6.09, which included a provision requiring the deliverance of "the lands and premises leased, with the improvements thereon" to the landlord at the termination of the lease. Accordingly, the district court did not abuse its discretion in refusing the instruction.

-6-

We affirm the district court's judgment with respect to the issue of breach.

## C.     Damages

TPI contests, *inter alia*, the sufficiency of the evidence supporting Powell's claims for compensatory and consequential damages resulting from TPI's breach of the lease. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the nonmovant and determining whether a factfinder, using reasonable inferences, could rationally find for the nonmovant on that issue. First Union Nat'l Bank v. Benham, 423 F.3d 855, 863 (8th Cir. 2005).

### 1.     Compensatory Damages

TPI and Powell agreed, and the district court instructed, that the cost of replacing the tanks is the appropriate measure of Powell's compensatory damages. The district court also instructed that the award should not put Powell in a better position than he would have been in had the lease not been breached. This formulation accords with well-established Arkansas law for damage to chattel affixed to realty, which requires replacement of the damaged chattel in its previous condition. Barnes v. Young, 382 S.W.2d 580, 583 (Ark. 1964); Mo. Pac. RR. Co. v. Wood, 263 S.W. 964, 965 (Ark. 1926); Bush v. Taylor, 197 S.W. 1172, 1174 (Ark. 1917). TPI maintains that to place Powell in the position he would have been in absent a breach, the evidence must establish the cost of replacing the tanks as they were at the time of their removal. Calculation of these damages may be done in two ways: the tanks' market value at the time of removal, or the cost of replacement reduced by a consideration of depreciation. Wood, 263 S.W. at 965. At trial, Powell presented two bids for the installation of new gas station equipment as the sole evidence of his compensatory damages. No evidence of the tanks' market value or depreciation was presented, and thus TPI contends that judgment as a matter of law be entered in its favor based on Powell's failure to satisfy his burden of proof or, in the alternative, that

a new trial be granted on the issue of damages.  Powell counters that TPI's position is impracticable because current environmental laws require the installation of new tanks.

Arkansas law does not recognize a practicability inquiry in the application of its damages rule.  In Barnes, the Arkansas Supreme Court held that the measure of damages for the destruction of a fifty-year-old fence was not the total cost of replacement, but only the cost of replacement of the existing fence in the same condition as existed when destroyed.  382 S.W.2d at 583.  Powell has established that he suffered damages, and he is entitled to some recovery therefor.  The notion of replacing aged property in its previous condition is abstract and even fictional; what it expresses is the Arkansas courts' requirement that the interests of the parties be balanced in the calculation of money damages.  See Wood, 263 S.W. at 965 (presenting methods of calculating money damages for the replacement of destroyed fixtures).  The cost of replacing the tanks reduced by depreciation is thus a fair measure for both parties, especially in cases such as this one, in which the difference in condition is significant.  In this case, the measure of compensatory damages would be best represented as the cost of installing the new tanks reduced by the difference in value between the new tanks and the old tanks, though the market value of the old tanks at the time of their removal would presumably also be an acceptable measure of damages. Id.  Accordingly, we remand for a new trial on the issue of compensatory damages under the valuation formulations reflected in Arkansas case law.

2.    Consequential Damages

TPI also contends that the evidence was insufficient to prove Powell's claim for consequential damages in the form of lost rent resulting from TPI's removal of the tanks.  For Powell to prevail on this claim, the evidence must first show that it is reasonably certain that he lost rent due to TPI's breach; the second, separate issue of the lost rent's value may be shown by a lesser standard of proof.  See Bank of Am., N.A. v. C.D. Smith Motor Co., 106 S.W.3d 425, 434-36 (Ark. 2003).

We agree that the evidence, even when taken in the light most favorable to Powell, is insufficient to show that the removal of the tanks caused Powell's loss in rental value. Merely providing evidence of what the previous tenant paid and of what rent offers were later made does not establish with reasonable certainty that the difference was caused by the breach. Instead, it satisfies the second part of the analysis by evincing a value and is thus necessary, but not sufficient, for recovery of consequential damages. Powell cites <u>Sumlin v. Woodson</u>, a holdover tenant case, for the proposition that evidence of rental value alone is sufficient to establish lost rents. 199 S.W.2d 936 (Ark. 1947). The first part of the analysis is implicit in <u>Sumlin</u>: the landlord's inability to accept the actual rental offer(s) he received was caused with reasonable certainty by the tenant's continued possession of the property. In contrast, Powell asserts that the change in the rental value reflects his inability to attract a petroleum tenant due to the removal of the tanks, but he failed to produce evidence tending to show with reasonable certainty that he could have rented to a petroleum tenant had the tanks been in place or that the tanks' removal was the reason why no prospective petroleum tenant made an offer.

As with the matter of compensatory damages, we also remand for new trial the issue of consequential damages under the principles set forth in the Arkansas cases.

D. Attorney's Fees

In light of our reversal of a portion of the judgment, we also vacate the award of attorney's fees, the amount of which should be determined by the district court following the new trial on the issue of damages. <u>See</u> <u>Dawson v. Temps Plus, Inc.</u>, 987 S.W.2d 722, 729 (Ark. 1999).

We affirm the district court's judgment with respect to the breach issue, reverse with respect to the damages issues and attorney's fees, and remand the case to the district court for a new trial in accordance with the views set forth in this opinion.

_____