# United States Court of Appeals
## For the Eighth Circuit

_____

No. 08-3780

_____

Tarek Al-Birekdar

*Plaintiff - Appellee*

v.

Chrysler Group, LLC

*Defendant - Appellant*

_____

No. 09-1091

_____

Tarek Al-Birekdar

*Plaintiff - Appellant*

v.

Chrysler Group, LLC

*Defendant - Appellee*

DaimlerChrysler Corporation

*Defendant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

Submitted: November 14, 2012
Filed: March 11, 2013

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Chrysler Group, LLC (Chrysler) appeals an adverse jury verdict in favor of Tarek Al-Birekdar on a retaliation claim under the Missouri Human Rights Act (MHRA). Al-Birekdar cross-appeals, claiming the district court[1] improperly granted a motion for directed verdict on a punitive-damages claim and improperly reduced the attorney's fee award.[2] We affirm the judgment of the district court but remand for the district court's consideration of Al-Birekdar's request for additional fees incurred in the successful defense of his jury verdict.

I.    Background

Al-Birekdar is a Muslim. He began working for Chrysler at its automobile manufacturing plant in Fenton, Missouri, as a skilled-trades electrician in 2000. Chrysler terminated Al-Birekdar in 2005 for taking an unapproved vacation in

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

[2]Al-Birekdar also argued in his briefs that the district court erred by excluding evidence regarding the treatment of two other employees who Al-Birekdar alleges were similarly situated. However, Al-Birekdar abandoned this claim at oral argument, and we typically do not address abandoned claims. See United States v. Janis, 556 F.3d 894, 899 n.2 (8th Cir. 2009).

violation of a five-day leave policy. Al-Birekdar subsequently sued Chrysler, claiming discrimination and retaliation under the MHRA.[3]

At trial, Al-Birekdar presented evidence to portray the plant as a generally hostile work environment. He alleged the hostile treatment started almost immediately after he began working, mostly due to mistreatment by two of his supervisors: Shorna Coffey and Ed Schoonover. As to the retaliation claim, Al-Birekdar argued that Chrysler terminated him in retaliation for a previously filed charge of discrimination with the Missouri Commission on Human Rights (MCHR) against Chrysler. The evidence Al-Birekdar presented at trial regarding the events surrounding the charge of discrimination and his termination is detailed below.

### A.    Charge of Discrimination with the MCHR

In August 2003, Al-Birekdar used foul language directed at co-worker Ken Frankenberg over the work radio. Al-Birekdar used this language in response to a racially offensive remark by Frankenberg. Local plant management placed Al-Birekdar on indefinite suspension and initially did not punish Frankenberg.

After being put on indefinite suspension, Al-Birekdar complained to Jan Carroll, human-resources manager at the plant. He told Carroll about the racially offensive remark and complained of disparate treatment. Carroll investigated the incident. Al-Birekdar testified that he provided Carroll with a list of ten people to interview but that she did not interview any of them, which Carroll denied. Carroll took no action against Frankenberg, and Al-Birekdar remained on indefinite suspension.

---

[3]The jury returned a verdict for Chrysler on a discrimination claim. Al-Birekdar does not appear to cross-appeal this verdict.

On September 8, 2003, Al-Birekdar filed a charge of discrimination with the MCHR. In the charge, Al-Birekdar detailed the situation surrounding his indefinite suspension and also alleged general mistreatment since 2001. After Al-Birekdar filed this charge, Carroll conducted a second investigation. The second investigation revealed that Frankenberg had used offensive, discriminatory language directed at Al-Birekdar. Frankenberg was suspended for thirty days, and Al-Birekdar's suspension was changed to thirty days. Because Chrysler punished Frankenberg and changed Al-Birekdar's punishment, the MCHR determined that Chrysler had remedied the situation and found no disparate treatment.

B.     Vacation Request and Al-Birekdar's Termination

Chrysler's vacation-request policy is governed by the United Auto Workers' collective-bargaining agreement. According to the agreement, an employee must submit a written vacation request. However, in practice, Chrysler's vacation-request policy is much more informal. An employee can verbally request permission through his or her supervisor, even a few days in advance. The supervisor also has authority to code an employee on vacation after the fact.

Roughly eighteen months after filing the charge, in March 2005, Al-Birekdar requested vacation by submitting a written vacation request. On the back of the form, Al-Birekdar circled the dates June 11–17 as his requested vacation period. On the front, Al-Birekdar mistakenly requested vacation for July 11–17 rather than June 11–17. The vacation request was approved for July 11–17. At trial, Al-Birekdar admitted that he made a mistake filling out the form but stated that he did not realize the mistake until his termination.

Around June 4, Al-Birekdar learned that Coffey would become his supervisor on June 6. Al-Birekdar told Schoonover, his current supervisor, that he was going on

vacation starting June 11 and requested permission to work a half day on June 10. Schoonover asked if he had a form approved, and Al-Birekdar stated he did. Schoonover told Al-Birekdar that he needed Coffey's permission. On June 8, Al-Birekdar told Coffey that he was going on approved vacation the next week and wanted to leave early on Friday, June 10. Coffey approved this request, and Al-Birekdar took a half-day on June 10.

At the end of her shift on June 10, Coffey notified her supervisor, Edgar Loaiza, of Al-Birekdar's vacation. Loaiza asked Coffey to confirm Al-Birekdar's vacation because he did not recall seeing it on the schedule. Coffey claimed she could not find any record of a vacation approval for June 11–17. Coffey also asked Schoonover whether he approved Al-Birekdar's vacation for June 11–17, which he denied. Coffey reported her findings to Loaiza the next day. Loaiza told Coffey to report this information to Carroll. Coffey emailed Carroll, explaining what she had learned so far, and asking, "Is there any action that can be taken on this?" In response, Carroll requested more information and also instructed those involved: "Do not code him vacation, if indeed he is not on an approved vacation by your department, and it will be addressed upon his return."

Because Al-Birekdar was not coded as on vacation, he automatically registered as absent without leave (AWOL) in Chrysler's computer system. According to the leave policy, an employee is subject to termination if he or she "is absent for five (5) days without notifying the plan in accordance with the procedure established pursuant to Sec. (94) of the Agreement unless, for a reason beyond his control, he is unable to comply with such notice requirements." Henry Murawski, a human-resources employee, ran Al-Birekdar's weekly attendance report and discovered he was considered AWOL. Murawski then sent Al-Birekdar a written notice of his termination on June 18.

When Al-Birekdar returned from vacation and learned of his termination, he filed a grievance, appealing his termination.[4] Jim Baines, the union steward involved in Al-Birekdar's grievance claim, testified that when he attempted to negotiate a lesser punishment, Carroll refused to reinstate Al-Birekdar. Carroll stated that they wanted to "teach [Al-Birekdar] a lesson." Tom Miller, a Chrysler employee since 1968, testified that he was not aware of any other skilled-trades person ever being terminated for allegedly violating the five-day leave policy.

### C. Damages Testimony

Al-Birekdar requested $191,000 in economic damages and also requested emotional-distress damages. Al-Birekdar presented evidence to support his damages request through his own testimony, the testimony of his wife, and the introduction of various financial documents. Al-Birekdar and his wife provided a monetary figure for some damages claims, but not all.

The largest portion of Al-Birekdar's claim for damages was lost wages of $168,791.30. Al-Birekdar introduced his W2s from 2001, 2002, 2003, and 2004 as evidence of his yearly income. He then averaged his income from 2001, 2002, and 2004, coming up with an average monthly income of $9,928.89.[5] To calculate his total lost wages, he multiplied $9,928.89 by seventeen, the number of months he was

---

[4]Al-Birekdar did not claim that he was terminated for discriminatory or retaliatory reasons during the grievance process. In the final step of the grievance process, Chrysler overturned the termination decision. Al-Birekdar was reinstated in November 2006.

[5]He did not include income from 2003 because he did not work for four months due to a neck injury, so his income was substantially lower.

not employed by Chrysler.[6]  Al-Birekdar testified that he had a $13,357.03 penalty for taking out his IBEW Local 756 pension early and a $7,345.95 tax penalty for an early withdrawal of his Chrysler 401(k).  Al-Birekdar also testified that he had taken loans from his wife's parents and friends, totaling roughly $65,000.00 at 5% yearly interest for a little over two years.  Al-Birekdar also claimed out of pocket medical expenses of $1,244.00 due to losing insurance coverage when he was terminated.  He also took out credit card cash advances totaling $5,748.70 at 6.572% interest.  Al-Birekdar did not present evidence of the amount of interest these advances accrued.

### D.    Verdict and Motions

Before the case was submitted to the jury, Chrysler moved for judgment as a matter of law (JMOL) on the discrimination, retaliation, and punitive-damages claims, arguing Al-Birekdar had not presented sufficient evidence to support these claims.  The district court granted Chrysler's motion for JMOL regarding Al-Birekdar's punitive-damages claim, but denied the motion as to all other claims.

The jury found for Chrysler on the discrimination claim and for Al-Birekdar on the retaliation claim.  The jury awarded Al-Birekdar $197,000 in economic damages and $3,000 in emotional-distress damages.  Chrysler renewed its motion for JMOL and also filed a motion for a new trial, and the district court denied both.

After the verdict, Al-Birekdar's attorney filed a motion for attorney's fees.  Al-Birekdar requested an hourly rate of $365.00 per hour for 478.3 hours of work, totaling $174,570.50.  The district court lowered the hourly rate to $250, relying on recent attorney's fee awards from that district.  Next, the district court excluded "the hours counsel has documented for administrative and ministerial tasks (26.7 hours),

---

[6]During his seventeen months away from Chrysler, Al-Birekdar did some work in Biloxi, Mississippi.  His wages from this job were $3,077.20.

-7-

the hours documented for reviewing court e-mail transmissions (4.8 hours), and the hours documented for preparation of extensions of time (1.6 hours)." The district court relied on local court opinions to determine that awarding fees for these tasks is improper.

Finally, the district court applied a "global cut" because it found that Al-Birekdar's overall success in the case was limited. The district court determined Al-Birekdar's success was limited because Chrysler obtained a directed verdict on the punitive damages claim and Al-Birekdar did not prevail on all claims submitted to the jury. Further, the district court found that the unsuccessful claims were not related to the successful claim. The district court instituted a 50% global cut of fees, finding a global cut was an appropriate method for reducing the fee award in the absence of a "superior method to adequately parse plaintiff's billed hours." The resultant fee award was $55,650.00.

II.    Chrysler's Arguments on Appeal

Chrysler raises several arguments on appeal: 1) the jury instruction on Al-Birekdar's retaliation claim was improper, 2) the district court erred in denying the motion for JMOL and, alternatively, the motion for a new trial, and 3) the jury's damages award is not supported by the evidence. We address each in turn and reject all three arguments.

A.    Jury Instruction on Retaliation Claim

Chrysler argues that the district court erred by instructing on the "contributing factor" standard and by not using the phrase "decision to discharge" instead of simply "discharge." The district court instructed the jury on the MHRA retaliation claim as follows: "Your verdict must be for plaintiff on plaintiff's claim of . . . retaliation if

you believe . . . plaintiff's filing of a previous charge of discrimination was a contributing factor in such discharge."

We review jury instructions for an abuse of discretion. Taylor v. Dormire, 690 F.3d 898, 900 (8th Cir. 2012). "A district court possesses broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity. . . . [R]eview is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Linden v. CNH Am., LLC, 673 F.3d 829, 836 (8th Cir. 2012) (citation and internal quotation marks omitted).

First, the use of the contributing factor standard was proper. We explicitly stated in Wallace v. DTG Operations, Inc., that the "contributing factor" standard is the proper standard for MHRA retaliation claims. 563 F.3d 357, 360 (8th Cir. 2009) (citing Hill v. Ford Motor Co., 277 S.W.3d 659 (Mo. 2009)). Next, the district court did not err by refusing to use Chrysler's requested "decision to discharge" language. The phrase "plaintiff's filing of a previous charge of discrimination was a contributing factor in such discharge" adequately instructs on the applicable law. See Linden, 673 F.3d at 836. Regardless, it is unclear what difference use of the language "in such decision to discharge" instead of "in such discharge" would make. Therefore, we reject this claim.

### B.     Sufficiency of the Evidence to Support the Verdict

Chrysler also claims that the district court erred in denying its motions for JMOL and for a new trial. Both motions were based on the sufficiency of the evidence. We review de novo the denial of a motion for JMOL based on the sufficiency of the evidence. Powell v. TPI Petroleum, Inc., 510 F.3d 818, 824 (8th Cir. 2007). "We must affirm the jury's verdict 'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could

not have found for that party.'" Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006) (quoting EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003)). "In deciding whether to grant judgment as a matter of law, we may not weigh the credibility of the evidence, and conflicts in the evidence must be resolved in favor of the verdict." S. Wine & Spirits of Nev. v. Mountain Valley Spring Co., 646 F.3d 526, 533 (8th Cir. 2011).

We review the denial of a motion for a new trial for an abuse of discretion. Powell, 510 F.3d at 822. "When the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." Wash. Solutions, Inc. v. PDQ Mfg., 395 F.3d 888, 892 (8th Cir. 2005) (citation and internal quotation marks omitted).

We hold Al-Birekdar presented sufficient evidence to support the verdict under the MHRA "contributing factor" standard. One Chrysler employee testified that he could not remember a skills-trade person ever being terminated for violating the five-day leave policy. Also, Jan Carroll, the human-resources manager at the plant who was involved with Al-Birekdar's charge of discrimination in 2003, expressed a desire to teach Al-Birekdar a lesson during his termination process. The jury could have interpreted Carroll's statement as a desire to retaliate against Al-Birekdar for his previously filed charge of discrimination. We recognize that Chrysler presented a valid alternative rationale for Al-Birekdar's termination and Carroll's statement. However, the jury rejected this rationale, and to reverse the jury's verdict would require us to view the evidence in a light most favorable to Chrysler.

## C. Damages Award

Chrysler also challenges the sufficiency of the evidence to support the jury's economic-damages award. "[W]e review damages awarded by the jury for sufficiency of the evidence and we will not reverse a jury verdict for insufficient

-10-

evidence unless no reasonable juror could have returned a verdict for the non-moving party." United States v. Larry Reed & Sons P'ship, 280 F.3d 1212, 1214 (8th Cir. 2002) (citation and internal quotation marks omitted). Testimony regarding the damages amount need not be exact. See Comcast of Ill. X v. Multi-Vision Elecs., Inc., 491 F.3d 938, 947 (8th Cir. 2007) ("Damages may not be determined by mere speculation or guess, but they may be subject to just and reasonable inference, although the result be only approximate. Once liability has been established, the risk of uncertainty in calculating damages falls upon the wrongdoer." (internal citations and quotation marks omitted)).

In this case, the testimony established an approximate amount of damages. Al-Birekdar and his wife testified specifically about the amounts paid for early withdrawal of retirement funds and other payments. Al-Birekdar also introduced various financial documents to support his claims, including past W2s and statements from his retirement accounts. We recognize that at times the evidence presented regarding economic damages was unclear. However, because the damages need only be approximate, Al-Birekdar's evidence is sufficient.

III.    Al-Birekdar's Arguments on Cross-Appeal

Al-Birekdar raises two arguments on cross appeal: 1)  the district court improperly refused to allow punitive damages to go to the jury, and 2) the district court's reduction of the requested attorney's fees was unreasonable. We affirm the district court's refusal to submit the punitive damages claim to the jury, but we reverse the district court's reduction of attorney's fees.

A.    Punitive Damages Claim

First, Al-Birekdar argues the district court erred in granting Chrysler's motion for JMOL on his punitive-damages claim. "Under Missouri law, punitive damages

-11-

are . . . available when the defendant's conduct is 'outrageous' due to evil motive or reckless indifference to the rights of others, and must be proven by clear and convincing evidence." Rowe v. Hussmann Corp., 381 F.3d 775, 784 (8th Cir. 2004) (quoting Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575 (8th Cir. 1997)). Although the evidence presented at trial was sufficient to support the jury's verdict on the retaliation claim, the evidence was not sufficient to support a finding that Chrysler's actions were due to an evil motive or reckless indifference to Al-Birekdar's rights. Therefore, the district court did not err in refusing to submit the question of punitive damages to the jury.

### B.    Attorney's Fee Award

Finally, Al-Birekdar challenges the district court's reduction of his attorney's fee award request. "In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies." Weitz Co. v. MH Washington, 631 F.3d 510, 528 (8th Cir. 2011). "In Missouri, attorney's fees are not recoverable from another party, except when allowed by contract or statute." Trim Fit, LLC v. Dickey, 607 F.3d 528, 532 (8th Cir. 2010) (citing Essex Contracting, Inc. v. Jefferson Cnty., 277 S.W.3d 647, 657 (Mo. 2009)). Missouri law states that the district court "may award court costs and reasonable attorney fees to the prevailing party" if successful on an MHRA claim. Mo. Rev. Stat. § 213.111.2.

"The decision to award or deny attorney fees and the amount of any award rests within the sound discretion of the [district] court and we will not disturb the district court's decision absent a clear abuse of that discretion." Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1094 (8th Cir. 2012) (alteration in original) (internal quotation marks omitted). The district court retains this discretion "[d]ue to its unique understanding of and exposure to proceedings before it." Denesha v. Farmers Ins. Exch., 161 F.3d 491, 501 (8th Cir. 1998).

i.      Hourly Rates and Reasonable Fee

First, Al-Birekdar challenges the district court's determination of a reasonable hourly rate and reasonable services. When determining reasonable attorney's fees, the district court uses the lodestar method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Typically, we will not disturb the district court's determination of an appropriate hourly rate and reasonable services. As we noted in Lash v. Hollis, "the district court is better positioned than the appellate court to understand what services were reasonable and what hourly rates were appropriate in the relevant market." 525 F.3d 636, 641 (8th Cir. 2008). We find that the district court did not abuse its discretion with "line item" cuts of hours for administrative and ministerial tasks, review of court e-mail transmissions, and preparation of extensions of time. The district court also did not abuse its discretion in lowering the hourly rate. The district court carefully considered the proper hourly rate and reasonable services, using relevant case law as part of its analysis.

ii.      Reduction of Hours

Al-Birekdar also challenges the district court's global cut based on Al-Birekdar's limited success. In Hensley, the U.S. Supreme Court explained how to determine an appropriate fee award in cases in which a plaintiff succeeded on some, but not all, claims. 461 U.S. at 434–37. "If any issues on which the plaintiff lost are unrelated to those on which he won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded." Jenkins v. Missouri, 127 F.3d 709, 716 (8th Cir. 1997) (interpreting Hensley, 461 U.S. at 434–35). "A plaintiff can be compensated for work on unsuccessful claims if they are sufficiently related to the successful claim because they 'involve a common core of facts' or 'are based on

-13-

related legal theories.'" Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 966 (8th Cir. 2012) (quoting Hensley, 461 U.S. at 434).

Here, the district court thoroughly analyzed Al-Birekdar's claims and made an express finding that the claims were not sufficiently related. When coupled with Al-Birekdar's failure to obtain punitive damages, we find no abuse of discretion. See Marez, 688 F.3d at 966 (upholding the district court's reduction of requested of attorney's fees, finding the attorney had limited success partly due to the failure to obtain the requested punitive damages).

Finally, the district court's reduction of fees by 50% does not constitute an abuse of discretion. See Hensley, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."). In so holding, we necessarily recognize the district court's "unique understanding" of the relationship between the claims at issue and the role the claim for punitive damages played in the overall dynamics of the underlying litigation. Denesha, 161 F.3d at 501; see also, Hensley, 461 U.S. at 436 (stressing that there are no bright-line rules for determining degree of success and emphasizing that "the range of possible success is vast.").

IV.    Conclusion

The judgment of the district court is affirmed. Because Al-Birekdar also requested attorney's fees for time spent on post-trial motions and appellate work, however, we remand to the district court for consideration of this request, leaving the issue to the district court's discretion.

_____

-14-