# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1288

_____

| | | |
|---|---|---|
| Nutrisoya Foods Inc., | * | |
| a Canadian corporation, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Sunrich, LLC, a Minnesota limited | * | |
| liability company, doing business | * | |
| as Sunrich Foods, Inc., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 2010
Filed: June 8, 2011

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Nutrisoya Foods, Inc. ("Nutrisoya") sued Sunrich, LLC, d/b/a Sunrich Foods, Inc. ("Sunrich") for breach of contract. Following a trial, the jury returned a verdict in favor of Nutrisoya. Thereafter, Sunrich moved for judgment as a matter of law or, alternatively, for a new trial, and the district court[1] denied both motions. On this

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota

appeal, Sunrich argues that the district court erred in denying Sunrich's motion for new trial because the court failed to give jury instructions regarding (1) the proper standard for breach of an installment contract and (2) the law pertaining to delegation of a contract. Sunrich also asserts that the district court erred in denying Sunrich's motion for judgment as a matter of law because Nutrisoya failed to prove a breach of the entire installment contract. For the following reasons, we affirm.

I. *Background*

Nutrisoya is a Canadian corporation with its principal place of business in Quebec, Canada. Sunrich is a Minnesota limited liability corporation with its principal place of business in Minnesota. In 2004, Sunrich and Nutrisoya entered into a written contract ("Agreement") under which Sunrich would produce, package, and deliver a rice milk product ("Product") to Nutrisoya. Pursuant to the Agreement, Sunrich agreed to "manufacture and package the Product for Nutrisoya . . . subject to the terms and conditions" of the Agreement. Among those terms and conditions, Sunrich would incur the expense of having the Product delivered from Sunrich's plant in Alexandria, Minnesota, to Nutrisoya's warehouse in Montreal, Canada. The initial contract term was for three years, from April 2004 to March 2007.

In addition, Nutrisoya was required to "transmit in writing to Sunrich, as required by Sunrich, a monthly manufacturing and packaging projection plan for the Product, for a period of three consecutive months," and to transmit to Sunrich, at least 21 days before the beginning of each month, a written plan confirmation for Sunrich's approval. During the course of the contractual relationship, however, Nutrisoya did not submit these manufacturing and packaging plans. Instead, the parties developed a less formal arrangement. Initially, Nutrisoya would call ahead to inform Sunrich of its needs, and the parties would schedule a production date. Subsequently, Nutrisoya would simply send a purchase order without calling first. If Sunrich needed to change the production date, Sunrich would contact Nutrisoya to change the plans accordingly.

In October 2005, Sunrich's parent company, SunOpta, Inc. ("SunOpta"), issued a press release announcing a contract under which SunOpta would produce a soy milk product for a major global retailer. The new contract with this new customer was expected to generate approximately $20 million in annual revenue for SunOpta. Sunrich would produce the soy milk product for the retailer at the same facility where it packaged the Product for Nutrisoya.

On October 15, 2005, Nutrisoya ordered 20,000 cases of Product with a requested delivery date of December 30, 2005. The following day, at the request of Sunrich, the order was divided into two parts: (1) revised Purchase Order 266 specifying 10,000 cases of Product for delivery on November 24, 2005, and (2) Purchase Order 267 specifying the remaining cases of Product for delivery on December 30, 2005. Sunrich filled Purchase Order 266 in early December 2005.

In late November 2005, Sunrich's Vice President of Operations, Kim Jenkins, called Nutrisoya's Vice President of Sales and Marketing, Larry Karass, to advise him that Sunrich was considering "getting out of the rice business." Jenkins also suggested that Sunrich might assign the Agreement to another packing company, Soylutions. Shortly after their conversation, Karass sent Jenkins an email expressing his alarm and concern over Sunrich's possible transfer of Nutrisoya's production to Soylutions, which Karass described as a "floundering competitor." Karass subsequently requested a conference call to discuss Sunrich's plans, and a call was initially scheduled for December 1, 2005. Jenkins later cancelled the call and promised to reschedule it. Despite Jenkins's assurances that a conference call would be held, Sunrich never scheduled one.

On December 9, 2005, nearly eight weeks after placing Purchase Order 267, Nutrisoya requested confirmation that the order would be shipped in December 2005. Sunrich responded that no production would occur in December 2005 and that all

further scheduling must be discussed with Jenkins. Nutrisoya advised Sunrich of its urgent need for the Product and requested a delivery date in January 2006.

On December 22, 2005, Sunrich sent Nutrisoya an email stating "that product would be available for pickup in Quebec City towards the first weeks of March [2006]." Nutrisoya's warehouse is located in Montreal, over 150 miles from Quebec City. Evidence at trial showed that, around this time, Sunrich embarked on an "exploratory scouting mission" to determine whether Soylutions could provide Product for Nutrisoya. Sunrich, however, never reached an agreement with Soylutions to fill Nutrisoya's Purchase Order 267, and, in fact, Sunrich's negotiations may not have advanced beyond the "conversation stage." Moreover, Nutrisoya voiced objections to having Soylutions produce the Product. On December 22, 2005, in response to Sunrich's email that day, Nutrisoya sent Sunrich an email stating, "We cannot wait until March. We are out of stock and you are in default of our agreement. You must act accordingly or take full responsibility for all loss that arises from your actions."

Around this time, Nutrisoya began searching for another rice milk producer to meet its current demands. On January 16, 2006, Sunrich sent Nutrisoya a letter, stating that it could not fill Purchase Order 267 according to Nutrisoya's timetable but offering to help "ensure that Nutrisoya will have product under the agreement within a reasonable period." The letter did not specify when Sunrich might be able to deliver the Product, but it did state that Sunrich would help Nutrisoya cover its order by locating another producer.

In early 2006, Nutrisoya entered into a new production contract with another rice milk producer, California Natural Products. Nutrisoya began placing its orders with California Natural Products, which began shipping to Nutrisoya in March 2006. The price charged by California Natural Products exceeded the price Sunrich charged under the Agreement.

-4-

Nutrisoya brought a diversity action in federal district court to recover damages due to Sunrich's nonperformance under the Agreement. In its complaint and at trial, Nutrisoya alleged that Sunrich had breached the Agreement by failing or refusing to continue producing and delivering the Product to Nutrisoya. At trial, Nutrisoya argued and produced evidence showing that the planning and forecasting requirement in the Agreement had been abandoned and waived as a term of the Agreement. Sunrich argued that each order under the Agreement constituted a separate "offer" requiring Sunrich's acceptance to create a contract; because Sunrich never "accepted" Purchase Order 267, there was no contract.

In addition, there was some limited evidence and discussion of whether Sunrich had delegated its duties under the Agreement to a third party. During Nutrisoya's cross-examination of Jenkins, Nutrisoya asked Jenkins whether the Agreement permitted "assignment" of Sunrich's performance to another party. Jenkins testified that he believed it was permissible to do so. During its closing argument, Nutrisoya made the following statement:

> You also heard a concept [from Sunrich]: Well, we could have assigned your contract. And what an assignment of the contract is, the whole contract is assigned to some other company, and whether they could or could not begs the question of whether anyone would want to take over this contract. And there's no evidence before you that this contract ever was assigned, ever, which means the responsibility on this contract remained with Sunrich the entire time and there's no other evidence.

At the close of evidence, Sunrich proposed a number of jury instructions. Among these, Sunrich sought an instruction on installment contracts, which would have stated that a default relating to a single installment is not a breach of the whole installment contract unless the breach "substantially impairs the value of the whole contract." The district court rejected this instruction over Sunrich's objection. Instead, the district court instructed the jury as follows:

Question No. 1 in the Special Verdict Form asks you to determine if Defendant Sunrich, LLC breached the contract with Plaintiff Nutrisoya Foods, Inc. by not filling Purchase Order 267. The contract in this case is the Manufacturing and Packaging Agreement (Plaintiff's Exhibit 1, also Defendant's Exhibit 1).

In considering your answer to Question No. 1, you are instructed that a contract is breached when there is a failure to perform an important part of a contract. A breach of contract by one party excuses performance by the other. The time for shipment or delivery or any action under a contract if not agreed upon shall be a reasonable time.

In addition, Sunrich requested a jury instruction that would have informed the jury that, in the absence of a contractual provision to the contrary, Sunrich had a right to assign or delegate the contract. The district court also rejected this instruction over Sunrich's objection.

The jury returned a verdict for Nutrisoya. In addition, the jury responded to several questions on a special verdict form. The jury found that the Agreement did not require Nutrisoya to submit its planning forecasts. The jury also found that Sunrich breached the Agreement "by not filling Purchase Order 267." Finally, the jury found that Sunrich's breach of contract directly caused damage to Nutrisoya. Pursuant to the special verdict form, the jury calculated the damages directly caused by Sunrich's breach—accounting for, among other things, Nutrisoya's cost of cover—in a total amount of $208,884.00.

Thereafter, Sunrich moved for judgment as a matter of law or, alternatively, for a new trial. In moving for judgment as a matter of law, Sunrich argued that the evidence at trial was insufficient to support a verdict for a breach of contract for two reasons: first, Nutrisoya did not offer evidence that Sunrich had ever accepted Purchase Order 267; second, Nutrisoya did not prove that Sunrich's failure to fill Purchase Order 267 resulted in a "substantial impairment" of the entire agreement. In

-6-

moving for a new trial, Sunrich argued that the district court gave four erroneous jury instructions based on, among other things, its failure to submit Sunrich's installment contract and delegation instructions. Sunrich also argued that the court had erroneously excluded certain items of evidence and had included an erroneous question on the jury's special verdict form.

The district court denied both of Sunrich's motions. In denying the motion for judgment as a matter of law, the court first concluded that there was sufficient evidence that a contract was formed because the parties had an installment contract, which, under Minnesota law, did not require an "offer" and "acceptance" of each installment. Second, the court found that there was sufficient evidence that Sunrich had breached the entire installment contract. In denying Sunrich's motion for a new trial, the court found that the jury instructions, evidentiary ruling, and special verdict form were not erroneous. Sunrich brought this appeal.

## II. *Discussion*

On appeal, Sunrich contends that the district court erred in denying its motion for a judgment as a matter of law and its alternative motion for a new trial. Specifically, Sunrich argues that the district court erred in denying Sunrich's motion for new trial because the court failed to give jury instructions regarding (1) the proper standard for breach of an installment contract and (2) the law pertaining to delegation of a contract. Sunrich also asserts that the district court erred in denying Sunrich's motion for judgment as a matter of law because Nutrisoya failed to prove a breach of the entire contract.

## A. *Jury Instructions*

We review for abuse of discretion a district court's rulings on jury instructions. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 572 F.3d 532, 536 (8th Cir. 2009). "The focus of our analysis is whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the

case to the jury." *Id.* (quotations and citations omitted). Even if the instructions were erroneous, "[w]e will reverse only if an instructional error has affected a party's substantial rights." *Id.*

### 1. *Breach of an Installment Contract*

Sunrich first argues that the district court committed reversible error by failing to give Sunrich's proposed jury instructions regarding the breach of an installment contract and instead giving general instructions regarding the breach of a delivery contract. Sunrich states that an installment contract can be breached in two different ways: (1) a single installment, but not the whole contract, can be breached by a nonconforming delivery; and (2) the entire installment contract can be breached if the nonconformity "substantially impairs the value of the whole contract." Sunrich contends that, at most, it breached a single installment of the Agreement by failing to deliver Purchase Order 267 by Nutrisoya's requested delivery date. An appropriate jury instruction, it maintains, would have allowed the jury to differentiate between a breach of a single installment and a breach of the entire installment contract. Sunrich contends that the court's erroneous jury instruction prejudiced it because Nutrisoya did not produce evidence that the entire installment contract was "substantially impaired" and therefore breached.

Nutrisoya counters that the district court's failure to give Sunrich's proposed jury instructions on an installment contract does not warrant a new trial. First, Nutrisoya argues that the court properly instructed the jury to find that Sunrich had failed to perform an "important part" of the contract before it find in Nutrisoya's favor. Second, Nurtisoya contends that, even if the instruction was incorrect, Sunrich was not prejudiced because it still could have argued to the jury that it should calculate Nutrisoya's damages based on the breach of only a single installment.

In a diversity action such as this, we apply Minnesota substantive law to resolve the dispute. *Vargo-Schaper v. Weyerhaeuser Co.*, 619 F.3d 845, 848 (8th Cir. 2010).

The district court concluded, and the parties do not dispute, that the Agreement was an installment contract. Under the Minnesota UCC,[2] "[a]n 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted." Minn. Stat. § 336.2-612(1). This statute indicates that a seller may breach an installment contract in two different respects. First, a "buyer may reject any installment which is nonconforming if the nonconformity substantially impairs the value of that installment." *Id.* § 336.2-612(2). Second, "[w]henever nonconformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole." *Id.* § 336.2-612(3). Thus, in order to find a breach of an entire installment contract, a "nonconformity or default with respect to one or more installments" must substantially impair the value of the entire installment contract.

The Minnesota UCC does not define the term "substantial impairment," but the term is used in other parts of the statute. *See, e.g.*, Minn. Stat. §§ 336.2-608(1), 336.2-610. Construing the term as it appears elsewhere in the Minnesota UCC, the Minnesota Supreme Court has stated, "the test ultimately rests on a commonsense perception of substantial impairment, akin to the determination of a material breach under traditional contract law." *Durfee v. Rod Baxter Imps., Inc.*, 262 N.W.2d 349, 353 (Minn. 1977) (discussing Minn. Stat. § 336.2-608). In turn, a material breach is "'[a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages.'" *Sitek v. Striker*, 764 N.W.2d 585, 593 (Minn. Ct. App. 2009) (quoting *Black's Law Dictionary* 200 (8th ed. 2004)). Under Minnesota law, unlike many other states, while "[t]he determination of substantial impairment necessarily involves factual findings," the "ultimate conclusion" is "legal in character." *Durfee*, 262 N.W.2d at 354; *accord Erling v.*

---

[2]Pursuant to Minnesota Statute § 336.1-101(a), the Minnesota commercial code "may be cited as the Uniform Commercial Code."

*Homera, Inc.*, 298 N.W.2d 478, 481–82 (N.D. 1980) (citing *Durfee* and noting that "Minnesota appears to be among a minority of jurisdictions which deem substantial impairment to be a conclusion of law"). Accordingly, the district court did not err by excluding a jury instruction that would have required the jury to make a legal conclusion.

Even without the "substantial impairment" language in Sunrich's proposed jury instruction, the district court's jury instruction properly instructed the jury on the question of whether Sunrich breached the Agreement. Sunrich argues that the jury should have been allowed to differentiate between a breach of a single installment (Purchase Order 267) or a breach of the entire installment contract (the Agreement). Nutrisoya sued for a breach of the entire contract—not merely to recover damages for a single nonconforming installment. The district court's jury instruction clearly asked the jury to find whether the failure to fill Purchase Order 267 amounted to a breach of the whole Agreement, as opposed to the a single installment. The instruction asked whether Sunrich had breached "the contract," and it specifically identified the Agreement as the contract in question. Further, it stated that a breach of the contract occurs "when there is a failure to perform an important part of a contract." Although "substantial impairment" is a legal conclusion, this language approximates the standards for a material breach or substantial impairment under Minnesota law.

While the proposed instructions would have provided additional language instructing the jury about a breach of a single installment, the instructions given did not hinder Sunrich from arguing that Nutrisoya's damages should be limited to the value of only one installment.[3] Sunrich did, in fact, make this argument; it simply contends that the jury instructions made this task more difficult. Considering the complete set of jury instructions and the circumstances of this case, the district court

_____

[3]Indeed, Sunrich does not contest the district court's instructions on damages, which required the jury to calculate the amount of damages "directly caused" by Sunrich's "fail[ure] to make delivery or repudiat[ion] [of] the contract."

-10-

did not abuse its discretion by declining to give an instruction clarifying the distinction between a breach of a single installment and a breach of the entire contract. *See Fed. Enters., Inc. v. Greyhound Leasing & Fin. Corp.*, 849 F.2d 1059, 1061 (8th Cir. 1988) ("We will not find error in instructions simply because they are technically imperfect or are not a model of clarity."). Instead, we find that the court's instructions, taken together, fairly and adequately submitted the breach-of-contract issue to the jury.

## 2. *Delegation*

Next, Sunrich contends that the district court committed reversible error by declining to instruct the jury that, in the absence of a contractual provision to the contrary, Sunrich had a right to assign or delegate the contract. The court should have given its proposed instruction to the jury as a curative instruction, Sunrich maintains, because "the attorney for Nutrisoya insinuated that Sunrich's efforts to delegate the contract to another manufacturer were tantamount to repudiation of the contract." Under Minnesota law, delegation of duties is generally permissible. *See* Minn. Stat. § 336.2-210(1). Furthermore, Sunrich maintains that the instruction was necessary because Sunrich had presented evidence of its attempt to "tak[e] lawful steps, in good faith, to ensure that Nutrisoya would be supplied with product."

We conclude that the district court properly declined to instruct the jury on the issue of delegation because the issue was not relevant to the case presented to the jury. Contrary to Sunrich's assertion, the record does not suggest that Nutrisoya "insinuated" that Sunrich breached or repudiated the Agreement by trying to delegate its duties to a third party. At most, Nutrisoya's counsel questioned Jenkins about whether the Agreement would permit delegation. During Nutrisoya's closing argument, counsel merely stated that Sunrich had not presented evidence showing that it had "assigned" the Agreement, and thus, Sunrich remained bound by the Agreement. Sunrich failed to show that Nutrisoya tried to use Sunrich's attempted delegation as evidence of Sunrich's breach. Likewise, evidence of Sunrich's attempts

to delegate would not have been relevant to show "good faith" as a part of some unspecified defense to liability. In fact, under the Minnesota UCC, delegation of performance does not "relieve[] the party delegating of any duty to perform or any liability for breach." Minn. Stat. § 336.2-210(1). Thus, the district court did not abuse its discretion by declining to provide a curative instruction to the jury explaining that delegation was legal under Minnesota law.

## B. *Sufficiency of the Evidence*

Finally, Sunrich argues that the district court erred in denying its motion for judgment as a matter of law because Nutrisoya failed to produce sufficient evidence of an element of its breach of contract claim. Sunrich contends that Nutrisoya's claim related to a contract order with an indefinite delivery date. Where there is no delivery date, the Minnesota UCC provides that delivery shall be at a reasonable time. Minn. Stat. § 336.2-309(1). Thus, according to Sunrich, whenever this gap-filling provision is used, the non-breaching party must provide the allegedly breaching party with reasonable notice of the alleged breach and an opportunity to cure. Absent reasonable notice, Sunrich asserts, there can be no breach. Sunrich maintains that Nutrisoya failed to show that it gave Sunrich proper notice.

We cannot review this argument because Sunrich failed to preserve this issue for appeal. We have explained that "[w]here a party fails to make a [Federal] Rule [of Civil Procedure] 50(b) motion in the district court regarding an issue, there is nothing for the court of appeals to review, and we thus lack the power to review the matter." *Moore v. Am. Family Mut. Ins. Co.*, 576 F.3d 781, 785 (8th Cir. 2009) (finding that appellant's argument that it was entitled to judgment as a matter of law was not reviewable on appeal because appellant did not raise the issue as a ground for relief in its Rule 50(b) motion). Here, after the jury returned its verdict for Nutrisoya, Sunrich filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In that motion, Sunrich argued that the evidence was insufficient to support the verdict for two reasons: (1) Nutrisoya "did not offer

evidence of Sunrich's acceptance of [Purchase] Order 267," and, thus, no contract had been formed; and (2) "Nutrisoya did not offer evidence that Sunrich's failure to fill [Purchase] Order 267 by December 30, 2005[,] resulted in a 'substantial impairment' of the entire agreement." It did not argue that the evidence was insufficient because Nutrisoya did not offer evidence that it had provided Sunrich with reasonable notice of Sunrich's alleged breach. Accordingly, Sunrich has not preserved the issue, and we have no power to review its argument.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____